DOMINICK J. VERRO, Respondent, v NEW YORK RACING ASSOCIATION, INC., Appellant.

Third Department, January 5, 1989

**APPEARANCES OF COUNSEL**

*Buchyn, O'Hare & Werner (Paul J. Campito* of counsel), for appellant.

*Paul H. Wein, P. C.,* for respondent.

**OPINION OF THE COURT**

LEVINE, J.

Plaintiff, a licensed jockey for thoroughbred racehorses, was severely injured on September 19, 1985 in a riding accident at the Oklahoma Training Track, which is part of the Saratoga Springs Thoroughbred Racing Track complex in Saratoga County owned and operated by defendant. Plaintiff had been engaged in a training exercise session with Queen Andrea, a three-year-old filly that he was to ride in a race on the following weekend. Plaintiff had the horse galloping in mid-track up to the three-eighths-mile pole and then caused the horse to "breeze", i.e., accelerate its speed, by whipping it several times, bringing it in close to the inside rail. About 15 feet before the horse reached the one-eighth-mile pole, it took a sharp turn to the left, broke through the inside rail and traversed along a drainage ditch located between the dirt course plaintiff had been on and a turf course within it, and came within such close proximity to the one-eighth-mile pole that plaintiff struck the pole and was thrown from the horse, thereby sustaining the injuries for which he seeks recovery.

Plaintiff brought suit alleging that the accident was the result of defendant's negligence in creating or permitting to be created various dangerous conditions at the Oklahoma track. Pretrial discovery was had in which oral depositions were taken of plaintiff and of two employees of defendant, one the general supervisor of all three race courses operated by defendant in the State (Aqueduct, Belmont and Saratoga), and the other defendant's resident manager of the Saratoga track. Defendant thereafter moved for summary judgment. Relying on *Turcotte v Fell* (68 NY2d 432), defendant contended that the record conclusively established that any and all of the hazardous conditions claimed by plaintiff to have caused his injuries were obvious and apparent, which plaintiff knew of or should have known of as an experienced professional jockey. Therefore, by participating in the horse-training activities leading to the accident with such knowledge, plaintiff voluntarily assumed the risk of injuries from those dangers and implicitly gave his informed consent that defendant owed him no duty of ordinary care with respect thereto, as a matter of law. Defendant appeals from Supreme Court's denial of its motion.

In our view, summary judgment should have been granted to defendant dismissing the complaint. The only defective and dangerous conditions at the Oklahoma track for which there was any evidence submitted by plaintiff were as follows: (1) defendant had long previously replaced the wooden railing at the track with one made of plastic, a material which breaks upon impact by a horse, rather than with the same railing of aluminum defendant had installed at the main Saratoga track, which railing would have withstood such impact; (2) the drainage ditch placed near the rail formed a natural "chute" which led the horse after breaking the rail directly to the one-eighth-mile pole struck by plaintiff; (3) the one-eighth-mile pole, being located in close proximity to the inside rail and of solid wood securely bolted to a concrete base, caused or aggravated plaintiff's injuries, which would have been avoided had the pole been placed differently or made or secured differently; and (4) defendant had failed to enforce security regulations preventing unauthorized persons from being at the Oklahoma track, whose presence "spooked" the horse, causing it to veer sharply to the left and collide with the rail.

Plaintiff in his deposition testified that he had been a licensed jockey for about one year at the time of the accident and had previously ridden in races at Saratoga and various tracks in 5 or 6 other States. He had also worked at Saratoga in some capacity for eight years and had trained horses on the Oklahoma track since 1983. Plaintiff stated that he was familiar with the risks of being thrown from a horse, of the propensities of thoroughbred racehorses to veer suddenly and of the particularly temperamental nature of young horses such as Queen Andrea. He also had been told previously of the replacement of the wooden rail by a plastic one at the Oklahoma track and had earlier observed where the rail had been taped in other, unrelated spots of disrepair. As to the role that defendant's poor security played in the incident, plaintiff testified that he previously saw "a lot of [unauthorized persons] there that shouldn't be there", that he noticed someone standing near the outside rail when the horse bolted to the left, and explained that "[p]eople that aren't around horses all the time tend to scare them".

Based upon the foregoing, we conclude that any oversight of defendant in failing to take precautions against the hazardous conditions at the Oklahoma track specified by plaintiff violated no duty defendant owed to him. The case of *Turcotte v Fell (supra)*, and the line of recent cases leading to it, teach

that participants in dangerous sports activities, particularly professional athletes who are presumed to have greater understanding of the dangers involved, "properly may be held to have consented, by their participation, to those injury-causing events which are known, apparent or reasonably foreseeable consequences of the participation" *(supra,* at 439). Under such circumstances, apart from instances of reckless or intentional infliction of harm, the participant is deemed to have implicitly given actual consent limiting the defendant's duty "to exercise care to make the conditions as safe as they appear to be. If the risks of the activity are fully comprehended or perfectly obvious, plaintiff has consented to them and defendant has performed its duty" *(supra,* at 439).

There is nothing in the record here to contradict the facts or inescapable inferences therefrom that each of the risks alluded to by plaintiff were "fully comprehended or perfectly obvious". Plaintiff was a professional jockey who had been occupationally involved with thoroughbred racing for many years at the Saratoga race track complex. He testified to his familiarity with the Oklahoma track and had trained horses on it since 1983. He knew that the rail was made of plastic and not aluminum. The contrasting abilities of plastic and of aluminum railing to withstand impact apparently were well known in horseracing circles, according to industry news publications plaintiff himself introduced into the record. In any event, it certainly can be inferred, in the absence of a direct denial by plaintiff through an affidavit in opposition to defendant's motion, that he was aware of the vulnerabilities of the rail in question, having previously observed areas of its disrepair and patching. Likewise, the record is devoid of anything to dispel the inference that the location of the ditch and the location, composition and bolting of the one-eighth-mile posts were anything but patently obvious and observable to an experienced professional such as plaintiff, over the many years of his exposure to these conditions at the Oklahoma track. And, as plaintiff himself conceded, to the extent that track security was lax, he well knew of the frequent presence at the Oklahoma track of persons who "shouldn't be there" and the effect of their presence on racing thoroughbreds.

Plaintiff, in an effort to overcome applying *Turcotte v Fell (supra)* to dismiss his claim, points to the quotation with approval in that case from *Cole v New York Racing Assn.* (24 AD2d 993, *affd without opn* 17 NY2d 761) where recovery in a horseracing accident was upheld because the defense had not

established that the injury-causing risk was " ' "ordinary and necessary" to the sport and thus inherent in the activity itself " *(Turcotte v Fell, supra,* at 443, quoting *Cole v New York Racing Assn., supra,* at 994). Plaintiff essentially argues that, since other safer materials than plastic were available for the inside rail, more malleable or removable mileage marker posts could have been used, and track security could better have been enforced, the dangerous conditions causing plaintiff's injuries were not ordinary, necessary or inherent in the activity. Hence, at least a triable issue existed as to defendant's duty, precluding summary judgment.

We think plaintiff interprets *Turcotte (supra),* based on its treatment of *Cole (supra),* much too narrowly. As is at least implicit in plaintiff's argument, if only the risks of ordinary and necessary dangers inherent in a sport are deemed assumed, the doctrine of no duty/assumption of risk developed in *Turcotte* and the recent case law leading to it would not apply to obvious, known conditions so long as a defendant could feasibly have provided safer conditions. Then, obviously, such risks would not be "necessary" or "inherent". This would effectively emasculate the doctrine, however, changing the critical inquiry from what the plaintiff knew or should have known concerning the dangers, to whether the defendant had a feasible means to remedy them. Awareness of ordinary and necessary dangers inherent in a sport constitutes one alternative basis for finding that a plaintiff assumed a particular risk, but does not supplant the basic rule absolving a defendant from liability as to known and obvious hazardous conditions. As expressly stated in *Maddox v City of New York* (66 NY2d 270), "the assumption doctrine 'applies to any facet of the activity inherent in it *and* to any open and obvious condition of the place where it is carried on' " *(supra,* at 277, quoting *Diderou v Pinecrest Dunes,* 34 AD2d 672, 673 [emphasis supplied]).

The case of *Cole v New York Racing Assn. (supra),* claimed by plaintiff to be controlling, is readily distinguishable in that the court in that case relied heavily upon the proof that the elevated concrete footings for the track railing which the plaintiff's head struck "were nonexistent at any other track in the country" and constituted a "deviation from the general custom for reasons of economy" *(supra,* at 993, 994). Contrastingly, as to this issue in the instant case, the only evidence in admissible form submitted on the motion was the deposition testimony of defendant's managerial employees, experienced

in and fully conversant with matters of racetrack construction and design, who testified that plastic railing was not only used at defendant's other tracks but is generally in common use. Plaintiff failed to submit any evidentiary proof to contradict this evidence, or that any of the other claimed defects deviated from customary track conditions in the industry.

Finally, we are unpersuaded by plaintiff's contention before Supreme Court that defendant's motion should be denied in order to permit plaintiff further discovery regarding defendant's prior safety reviews of Saratoga track conditions, particularly as to railing, which plaintiff claimed was revealed in a July 1985 article published in a horseracing industry periodical. Plaintiff deposed defendant's employees in May and June 1987 and not only inquired as to any prior safety reviews concerning track conditions, but also referred to other articles in the same periodical. At the time that defendant brought on this motion almost five months later, there were no outstanding requests for further discovery. Issue was joined in this action on May 19, 1986, some 18 months before this motion was brought. Consequently, plaintiff had ample opportunity to complete disclosure before defendant moved for dismissal (see, 4 Weinstein-Korn-Miller, NY Civ Prac ¶ 3212.18).

CASEY, J. P., MIKOLL, YESAWICH, JR., and MERCURE, JJ., concur.

Order reversed, on the law, with costs, motion granted and complaint dismissed.