MARGARET NAGAWIECKI et al., Respondents, v STATE OF NEW YORK, Appellant.

Third Department, October 12, 1989

## APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General (Michael S. Buskus* and *Peter J. Dooley* of counsel), for appellant.

*Kahn & Gordon, P. C. (Harold Gordon* and *Bernard Abel* of counsel), for respondents.

### OPINION OF THE COURT

KANE, J. P.

Claimant Margaret Nagawiecki (hereinafter claimant) sustained injuries to her back as a result of a fall while skiing at the State-owned Belleayre Mountain Ski Center on December 30, 1983, at about 3:40 P.M. At the time of the accident, she was 20 years of age and an expert skier. In company with her husband, claimant had been skiing at Belleayre for three days prior to the accident and was familiar with many of the trails, including the one on which she was skiing prior to her injuries, known as the "Yahoo" trail or slope number 7. This particular area at the scene of the accident was classified as an intermediate slope in degree of difficulty and the surface listed as "rototilled loose granular" with a 15-to-30-inch base. The daily trail report indicated a surface of "machine groomed-packed powder" at 8:15 A.M. and at midday.

At the time of the accident, claimant was proceeding down the center of the trail, after having watched her husband negotiate the same area a few minutes previously. As she approached the bottom of the trail, and about 75 feet therefrom, she observed a woman standing in the middle of the trail approximately 50 to 60 feet ahead, not on skis. Claimant passed her by changing her course to the right and thereafter attempted to make a sharp turn to the left toward the direction of the lift, when she encountered icy conditions. The ensuing events were described by claimant in her written statement as follows: "The hard turn caused my left ski to come off. As I tried to stop with the right ski, I slid on ice. I continued to slide on the ice down to the curve where I became airborne. The force twisted me so my back was headed toward the bottom. I flew into a pole holding safety fence, slid down the pole, hit ground, then slid head first down under the fencing, and slid on my stomach, down to the parking area between the two poles." The fence was an orange-colored plastic fence, installed on unpadded wooden poles about five inches thick, which ran along the access road to the lift above a parking lot some 20 feet below and about 10 to 15 feet from the bottom of the ski trail. Claimant impacted the pole with her lower back and right ski with a force sufficient to break the pole in half and cause serious injuries to her lower back.

Following a bifurcated trial, the Court of Claims found that the State had breached a duty of care owed to claimant which was a proximate cause of her injuries. The court also charged claimant with culpable conduct contributing 50% to her damages, which were determined to be in the sum of $110,000 for claimant and $22,000 for her husband, and, accordingly, entered judgment in their favor for 50% of that amount. This appeal by the State ensued.

We reverse. The duty imposed by the Court of Claims was based upon its conclusion that the State, as the owner and operator of a ski area, was obliged to maintain that facility in reasonably safe condition in view of all the circumstances and that its failure to pad wooden poles firmly embedded in the ground at the base of the trail breached its duty of care and created a dangerous condition. The court concluded that the injuries sustained by claimant, for which the State must respond in damages, were entirely foreseeable since fence posts are not inherent in the sport of skiing and claimant did not assume any risk of danger from them.

There is a duty imposed on a landowner to those on his land to keep it in a reasonably safe condition (see, Basso v Miller, 40 NY2d 233). In determining whether claimant is entitled to recover, we must first consider the issues related to the scope of the duty owed to claimant and any breach thereof, together with an analysis of claimant's "reasonable expectations of the care owed him by others" (Turcotte v Fell, 68 NY2d 432, 437). This in turn injects consideration of the risk assumed by claimant as we measure the nature and extent of the State's duty to exercise that degree of care required to make conditions as safe as they appear to be (see, supra).

Applying the principles set forth in Turcotte v Fell (supra), we conclude that, under these circumstances, there is no duty imposed upon the State as landowner and operator of a ski area to pad poles or fences, along the access lines to lifts or facilities located away from slopes and trails at the base of the outrun and beyond the limits of normal skiable terrain to protect claimant from the unfortunate consequences of her own actions. Here, claimant was an expert skier on an intermediate trail which she had skied twice before earlier that day. As an expert, she knew, or should have known, that after 3:30 P.M. on the day in question granular snow would "tighten" and icy conditions would develop. From her own description of the accident and, as found by the Court of

Claims, it is quite clear that as claimant approached the base area, she was skiing at an excessive and dangerous rate of speed under the circumstances, losing control as she encountered the change of snow conditions, which, in combination, caused her to fall and sustain serious injuries. To cast the State in liability under these circumstances, would, in effect, make the operator of a ski area an insurer of the safety of a skier upon the premises. It may be argued that it is entirely foreseeable that a skier would sustain injuries in a collision with an unpadded pole or fence, but foreseeability alone cannot create a duty where none existed before *(Pulka v Edelman,* 40 NY2d 781, 786). Finally, the fact that materials are available to make fences and posts such as the one struck by claimant safer or more flexible does not alter the logic of our conclusion *(see, Verro v New York Racing Assn.,* 142 AD2d 396, 400, *lv denied* 74 NY2d 611). Accordingly, the judgment should be reversed and the claim dismissed.

MIKOLL, YESAWICH, JR., LEVINE and MERCURE, JJ., concur.

Judgment reversed, on the law, without costs, and claim dismissed.