[No. C018483. Third Dist. Sept. 29, 1995.]

PATRICK J. CONNELLY, Plaintiff and Appellant, v.
MAMMOTH MOUNTAIN SKI AREA, Defendant and Respondent.

**COUNSEL**

J. Kenneth Jensen for Plaintiff and Appellant.

Hancock, Rothert & Bunshoft, Paul S. Rosenlund and Peter J. Koenig for Defendant and Respondent.

## OPINION

DAVIS, Acting P. J.—In this personal injury action, plaintiff Patrick Connelly (Connelly) sued defendant Mammoth Mountain Ski Area (Mammoth) after colliding with a ski lift tower. In granting summary judgment for Mammoth, the trial court rejected Connelly's claim that Mammoth improperly padded the tower; instead, the court found the collision with the tower to be an obvious, avoidable and inherent risk for which Mammoth owed no duty under the primary assumption of risk doctrine defined in *Knight* v. *Jewett* (1992) 3 Cal.4th 296 [11 Cal.Rptr.2d 2, 834 P.2d 696]. We shall affirm the judgment. Pertinent facts will be set forth in the discussion that follows.

## DISCUSSION

### 1. *Standard of Review*

A motion for summary judgment "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) An appellate court determines on its own whether these criteria have been met. (*Jambazian* v. *Borden* (1994) 25 Cal.App.4th 836, 844 [30 Cal.Rptr.2d 768].) For purposes of a summary judgment motion, "[a] defendant . . . has met his or her burden of showing that a cause of action has no merit if that party has shown that one or more elements of the cause of action . . . cannot be established . . . ." (Code Civ. Proc., § 437c, subd. (o)(2).)

### 2. *Background and Analysis*

On March 5, 1989, Connelly, who considered himself an advanced or expert skier at the time, collided with a ski lift tower on the Stump Alley Run at Mammoth, a run designated as "more difficult" (advanced intermediate). Connelly sustained serious injury. The accident occurred when one of Connelly's ski bindings released, causing Connelly to lose his ski, fall on his stomach, and slide downhill into the tower.

At the site of Connelly's collision, the Stump Alley Run is fairly wide and bisected by the ski lift. The tower into which Connelly collided was visible to approaching skiers for approximately 200 yards. On the day of the accident, the weather was sunny and the snow conditions were groomed and hardpacked. In his deposition, Connelly stated there was nothing dangerous or unusual that caused him to lose control and fall or that caused him to collide with the lift tower.

On the day of the accident, Connelly had skied at least one prior run down Stump Alley. In his skiing career, Connelly had skied past the fateful tower between 50 and 100 times.

In his complaint, Connelly sued Mammoth for premises liability and general negligence. Both theories were based on the following allegation of negligence: "Plaintiff [Connelly] lost control . . . and struck one of the metal towers and as a result, suffered serious injury because the metal tower was not properly padded." In his summary judgment papers, Connelly elaborated on this point. The padding on the tower that Connelly struck was not at snow level and was inadequate in any event to cushion the blow and prevent his injuries.

Mammoth moved successfully for summary judgment, contending that ski lift tower collisions are an inherent risk of skiing and that Mammoth owed no duty to protect Connelly from this inherent risk. ■ A duty to use due care is one of the elements of a negligence cause of action; if there is no such duty, there is no negligence action. (See *Wattenbarger* v. *Cincinnati Reds, Inc.* (1994) 28 Cal.App.4th 746, 751 [33 Cal.Rptr.2d 732].)

Mammoth's position is grounded in the doctrine of primary assumption of risk as defined in *Knight* v. *Jewett, supra,* 3 Cal.4th 296. In *Knight* and a companion case, *Ford* v. *Gouin* (1992) 3 Cal.4th 339 [11 Cal.Rptr.2d 30, 834 P.2d 724], the California Supreme Court noted there were two types of assumption of risk, primary and secondary.

■ "Secondary assumption of risk [arises] where a defendant breaches a duty of care owed to the plaintiff but the plaintiff nevertheless knowingly encounters the risk created by the breach. Secondary assumption of risk is not a bar to recovery, but requires the application of comparative fault principles. (*Knight,* at pp. 314-315.)" (*Wattenbarger* v. *Cincinnati Reds, Inc., supra,* 28 Cal.App.4th at p. 751.)

Primary assumption of risk arises where a plaintiff voluntarily participates in an activity or sport involving certain inherent risks; primary assumption of risk does bar recovery because no duty of care is owed as to such risks. (*Knight* v. *Jewett, supra,* 3 Cal.4th at pp. 314-316; *Wattenbarger* v. *Cincinnati Reds, Inc., supra,* 28 Cal.App.4th at p. 751.) "For example, an errantly thrown ball in baseball or a carelessly extended elbow in basketball are considered inherent risks of those respective sports." (*Wattenbarger, supra,* at p. 751.) The existence and scope of a defendant's duty of care in the primary assumption of risk context "is a *legal* question which depends on the nature of the sport or activity . . . and on the parties' general relationship to

the activity, and is an issue to be decided by the court, rather than the jury." (*Knight, supra,* at p. 313, italics in original.)

■ Snow skiing is a sport that involves certain inherent risks. This court has listed those risks on a couple of occasions. " ' "Each person who participates in the sport of [snow] skiing accepts the dangers that inhere in that sport insofar as the dangers are obvious and necessary. Those dangers include, but are not limited to, injuries which can result from variations in terrain; surface or subsurface snow or ice conditions; bare spots; rocks, trees and other forms of natural growth or debris; *collisions with ski lift towers and their components*, with other skiers, or with properly marked or plainly visible snow-making or snow-grooming equipment. (*Danieley* v. *Goldmine Ski Associates, Inc.* (1990) 218 Cal.App.3d 111, 123 . . . , quoting from Mich. Stat. Ann., § 18.483 (22)(2).)" ' "[1] (*Wattenbarger* v. *Cincinnati Reds, Inc., supra,* 28 Cal.App.4th at pp. 752-753; *Ferrari* v. *Grand Canyon Dories* (1995) 32 Cal.App.4th 248, 253 [38 Cal.Rptr.2d 65], parallel citation omitted, italics added.) Because of the obvious danger, the very existence of a ski lift tower serves as its own warning. (See *Danieley* v. *Goldmine Ski Associates, Inc.* (1990) 218 Cal.App.3d 111, 122 [266 Cal.Rptr. 749].)

Connelly collided with a ski lift tower while skiing. This risk, as noted, is inherent in the sport. Consequently, the trial court properly ruled in Mammoth's favor on this point, concluding that Mammoth, under the doctrine of primary assumption of risk, owed no duty to protect Connelly against this inherent risk.

Additionally, Connelly argued that Mammoth breached a different duty, the duty not to *increase* the inherent risks of skiing; Mammoth breached this duty, Connelly asserted, by failing to maintain adequate padding on the lift towers at snow level. This argument is in line with *Knight*'s observation that "[a]lthough defendants generally have no legal duty to eliminate (or protect a plaintiff against) risks inherent in the sport itself, it is well established that defendants generally do have a duty to use due care not to increase the risks to a participant over and above those inherent in the sport." (*Knight* v. *Jewett, supra,* 3 Cal.4th at pp. 315-316.)

There was no evidence, however, that Mammoth *increased* the inherent risk of colliding with a ski lift tower while skiing. For example, there was no evidence that Mammoth did or failed to do anything that caused Connelly to collide with the tower. Nor are we aware of any relevant legal authority in

---

[1]*Danieley* noted this Michigan statute was based on the common law and *Danieley* regarded it "as persuasive authority for what the common law in this subject-matter area should be in California." (*Danieley* v. *Goldmine Ski Associates, Inc., supra,* 218 Cal.App.3d at p. 123.)

California, and we have not been directed to any, *requiring* a ski area operator to pad its ski lift towers. It would be anomalous to hold an operator who padded its towers—as Mammoth did here—more liable than an operator who failed to do so.

Two out-of-state decisions have considered and rejected arguments similar or analogous to the one Connelly advances about padding. We find these decisions persuasive. In *Leopold* v. *Okemo Mountain, Inc.* (D.Vt. 1976) 420 F.Supp. 781 (applying Vermont law), the plaintiff argued that the doctrine of assumption of risk should not be applied because an unpadded ski lift tower is not a *necessary* risk to the sport of skiing and therefore is not "assumed" by the skier. In rejecting this argument, the *Leopold* court said: "This theory misses the point. While it is arguable, perhaps, that some of the hazards created by towers situated [on the ski trail] could have been reduced or eliminated prior [to the date of the accident] and were therefore not absolutely 'necessary,' the fact is that those hazards *were* 'obvious and necessary' to any skier who chose to ski the trail on that date. . . . [¶] The towers . . . were plainly visible . . . . [Plaintiff] knew or could easily observe that the towers were not padded . . . . Nothing was hidden from [plaintiff's] vision by accident or design. If [plaintiff] believed that the trail or the towers presented risks which were too great, he could have chosen not to proceed." (420 F.Supp. at pp. 786-787, italics in original.)

An analogous argument met an analogous fate in *Verro* v. *New York Racing Ass'n., Inc.* (1989) 142 A.D.2d 396 [536 N.Y.S.2d 262], which concerned the safety of jockeys riding at a horse racetrack. The court in *Verro* stated: "As is at least implicit in plaintiff's argument, . . . the doctrine of no duty/assumption of risk . . . would not apply to obvious, known conditions so long as a defendant could feasibly have provided safer conditions. Then, obviously, such risks would not be 'necessary' or 'inherent'. This would effectively emasculate the doctrine, . . . changing the critical inquiry . . . to whether the defendant had a feasible means to remedy [the dangers]." (*Id.*, at p. 265; accord, *Nagawiecki* v. *State* (1989) 150 A.D.2d 147 [545 N.Y.S.2d 954, 956] [". . . the fact that materials are available to make fences and posts such as the one struck by claimant safer . . . does not alter the logic of our conclusion [which dismissed a claim against a ski operator]," citing *Verro*].)

On the day of Connelly's accident, the ski lift tower that he struck could be seen by approaching skiers for about 200 yards. The tower was situated in a fairly wide part of the ski run. The weather was clear and the ski conditions were normal. Connelly had previously skied past the tower at least once on the day of the accident, and several dozen times in his skiing career. As

noted, Connelly has not alleged that Mammoth did or failed to do anything that caused him to collide with the tower. Connelly's binding gave way, as well as his ski, and his slide to the tower began. This was simply a very unfortunate accident. But the law is clear in California under the facts presented in this case: colliding with a ski lift tower while skiing is an inherent risk within the doctrine of primary assumption of risk, and Mammoth owed no duty to Connelly to protect him from this inherent risk. Furthermore, there is no evidence that Mammoth increased this inherent risk. Consequently, Mammoth has shown that Connelly cannot establish the duty element of his negligence and negligence-based premises liability causes of action; therefore, as the trial court concluded, Mammoth is entitled to summary judgment.

The judgment is affirmed.

Raye, J., and Morrison, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 13, 1995.