**Donald RANDALL, Plaintiff,**

**v.**

**MAMMOTH MOUNTAIN SKI AREA, Defendant.**

**No. S–98–0817 DFL GGH.**

United States District Court, E.D. California.

Sept. 16, 1999.

Laura M. Hagan, Law Offices of Paul S. Rudder, Mammoth Lakes, CA, for Plaintiff.

Charles E. Webb, Hancock, Rothert and Bunshoft, San Francisco, CA, Peter John Koenig, Arter and Hadden, San Francisco, CA, for Defendant.

## MEMORANDUM OF OPINION AND ORDER

LEVI, District Judge.

Plaintiff Donald Randall brings this personal injury action seeking damages for injuries suffered while skiing at Mammoth Mountain Ski Area ("Mammoth"). Defendant Mammoth now moves for summary judgment.

### I.

In May, 1997 Randall, a professional ski instructor, came to Mammoth Lakes, Cali-

fornia to participate in the United States Ski Association (USSA) National Coaches' School. The USSA contracts with Mammoth to use portions of the ski area for training and practice sessions of the Coaches' School.

The incident that gave rise to this lawsuit occurred on May 11, 1997, the last day of the Coaches' School. Randall alleges that as he was skiing downhill, he crashed into a set of artificial ridges, which he variously characterizes as "snow walls," (Compl.¶ 5), and "whoop-de-doos," (Pl.'s Mem. in Opp'n to Mot. for Summ. J. at 2). Randall describes the snow walls as "long ridges, about a foot and a half high, spaced several feet apart," which "are larger than the natural irregularities that occur on an ungroomed [ski] run." (*Id.*) Randall alleges—and for present purposes the court accepts as given—that whoop-de-doos "are designed for a specific training situation," and "are not intended to be skied over by a skier who is not expecting them, and if a skier encounters them unaware, he is likely to get hurt." (*Id.*) Randall further alleges that the ridges were built by Mammoth's crew in the afternoon or evening of May 10, and that "[b]ecause of the nature of the lighting on the run, the ridges were invisible to the skier coming downhill." (*Id.* at 3.)

On May 8, 1998 Randall filed this action, alleging negligence and willful misconduct on the part of Mammoth and its agents in failing to flag or otherwise mark the snow walls, or to warn USSA personnel of their existence. Mammoth now moves for summary judgment, arguing that the California doctrine of primary assumption of risk entitles it to judgment as a matter of law. Specifically, Mammoth argues that it owed no duty to protect or warn Randall in the circumstances, because California law recognizes no duty to protect participants from the "recognized inherent risks of the

sport of snow skiing," including "changes in terrain." (Def.'s Mem. in Supp. of Mot. for Summ. J. at 2.)

## II.

A finding of primary assumption of risk "embodies a legal conclusion that there is 'no duty' on the part of the defendant to protect the plaintiff from a particular risk." *Knight v. Jewett*, 3 Cal.4th 296, 308, 11 Cal.Rptr.2d 2, 9, 834 P.2d 696 (1992). The doctrine holds that voluntary participation in sports or similar activities constitutes an implied assumption of the risks inherent in those activities, and thus that neither coparticipants in sports nor operators of recreational facilities owe any duty to reduce these risks. *See id.* The Supreme Court has indicated that the primary assumption of risk doctrine derives from a policy judgment that tort law should not impose a duty where the duty would either chill participation in the activity or fundamentally alter its nature. *See id.* at 318, 11 Cal.Rptr.2d at 16, 834 P.2d 696; *see also Allan v. Snow Summit*, 51 Cal.App.4th 1358, 1367, 59 Cal.Rptr.2d 813, 818 (1996). Whether a duty exists in any particular fact setting is resolved by the court as a matter of law even though the duty determination inevitably rests on certain factual assumptions or findings about the particular activity of sport.[1] This case requires the court to decide whether the risks involved in navigating the particular obstacles that injured Randall are inherent to the sport of skiing.

In explaining the distinction drawn between inherent and non-inherent risks, the *Knight* Court noted that in the context of sports,

> conditions or conduct that might otherwise be viewed as dangerous often are an integral part of the sport itself. Thus, although moguls on a ski run pose a risk of harm to skiers that might not

1. Secondary assumption of risk applies when the plaintiff has acted unreasonably in encountering a known risk; this doctrine has been absorbed into the comparative negligence portion of a tort suit and is normally resolved by the jury. *See Knight*, 3 Cal.4th at 305–06, 11 Cal.Rptr.2d at 9, 834 P.2d 696.

exist were these configurations removed, the challenge and risks posed by the moguls are part of the sport of skiing, and a ski resort has no duty to eliminate them.

*Id.* at 315, 11 Cal.Rptr.2d at 14, 834 P.2d 696. Later Appeals Court cases applying *Knight* in ski accident cases have uniformly concluded that ski resort operators are under no duty to protect skiers from the "inherent" dangers of skiing. *See Allan,* 51 Cal.App.4th at 1367, 59 Cal.Rptr.2d at 818 (finding no duty to protect from inherent risk of icy conditions); *Connelly v. Mammoth Mountain Ski Area,* 39 Cal. App.4th 8, 11–12, 45 Cal.Rptr.2d 855, 857–58 (1995) (finding no duty to protect from inherent risk of skiing into ski lift tower); *O'Donoghue v. Bear Mountain Ski Resort,* 30 Cal.App.4th 188, 35 Cal.Rptr.2d 467 (1994) (finding no duty to protect from inherent risk of encountering terrain variations in forest adjacent to ski run). The Court in *Connelly* described the doctrine of primary assumption of risk as it applies to skiing cases:

> Each person who participates in the sport of snow skiing accepts the dangers that inhere in that sport insofar as the dangers are obvious and necessary. Those dangers include, but are not limited to, injuries which can result from variations in terrain; surface or subsurface snow or ice conditions; bare spots; rocks, trees, and other forms of natural growth or debris; collisions with ski lift towers and their components, with other skiers, or with properly marked or plainly visible snow-making or snow-grooming equipment.

*Connelly,* 39 Cal.App.4th at 12, 45 Cal. Rptr.2d at 857.

The cases make it abundantly clear, however, that primary assumption of risk does not relieve ski resort operators of all duties with regard to the safety of their facilities. As is often stated, operators "do have a duty to use due care not to increase the risks to a participant over and above those inherent in the sport." *Knight,* 3 Cal.4th at 315–16, 11 Cal.Rptr.2d at 14, 834 P.2d 696.

In determining whether an operator has a duty, certain distinctions, while not necessarily dispositive, appear to guide the analysis. First, if the risk is not created by some affirmative act of the operator, but rather by a failure to act to eliminate a naturally-occurring risk—nonfeasance as opposed to misfeasance—then a no duty finding is probable unless it can be held that the elimination of the risk would not fundamentally alter the sport.[2] Trees, rocks, changes in terrain, moguls and snow conditions all fall into the category of risks that the operator has no duty to eliminate and are deemed inherent in the sport of skiing. Second, if the risk is fairly viewed as manmade then a duty may arise unless the risk is obvious or unless the risk is necessary or fundamental to the sport, in the sense that it is substantially identical to natural risks that the operator has no duty to eliminate. Thus, in *Connelly,* the Court held that manmade hazards such as ski lift towers and snow-making or snow-grooming equipment are inherent risks so long as they are obvious, either because of their size or because they are well-marked. *See Connelly,* 39 Cal. App.4th at 12, 45 Cal.Rptr.2d at 857–858. Similarly, grooming or snowmaking activities that mimic normal natural effects would not give rise to a duty even if performed negligently, so as, for example, to create bare or icy patches. On the other

---

**2.** *See Van Dyke v. S.K.I. Ltd.,* 67 Cal.App.4th 1310, 1318 n. 9, 79 Cal.Rptr.2d 775, 779 n. 9 (1998) ("Bear Mountain correctly notes it need not take safety measures in the absence of duty. But we may properly note safety measures that do not affect the fundamental nature of the sport to determine whether primary assumption of the risk may be invoked."); *see also Allan,* 51 Cal.App.4th at 1367, 59 Cal.Rptr.2d at 818 (holding that application of primary assumption of risk "is closely tied to the policy underlying the finding of no duty, i.e., there should be no liability imposed which would chill normal participation or fundamentally alter the nature of the sport, but liability may be appropriate where the risk is not 'inherent' in the sport.").

hand, placement of an object, such as a metal sign, on a ski run so that it is not obvious from all directions would give rise to liability, *see Van Dyke,* 67 Cal.App.4th at 1317, 79 Cal.Rptr.2d at 779, as would "grooming" that left a large pit on the slope or otherwise created an atypical hazard, *see Danieley v. Goldmine Ski Assocs., Inc.,* 218 Cal.App.3d 111, 125, 266 Cal. Rptr. 749, 757 (1990) (affirming summary judgment based in part on lack of "any evidence in the record to substantiate the theory that some sort of path had forced plaintiff into the tree"); *cf. also Bush v. Parents Without Partners,* 17 Cal.App.4th 322, 329, 21 Cal.Rptr.2d 178, 182 (1993) (holding that placement of soap flakes on dance floor was affirmative act that increased risk of dancer falling and barred invocation of primary assumption of risk).

### III.

With these principles in hand, resolution of this motion becomes straightforward. First, the risk created here was caused by the affirmative activity of Mammoth in placing artificial snow walls on the slope. Second, the snow walls were not obvious nor were they substantially similar to changes in terrain found naturally and that skiers would expect to encounter. Had the defendant placed steel walls on the slope no one would doubt that the defendant at least had a duty to make the obstruction obvious; that the walls were constructed of snow does not alter the analysis, as Mammoth conceded at oral argument.

Citing language in *Fortier v. Los Rios Community College,* 45 Cal.App.4th 430, 52 Cal.Rptr.2d 812 (1996), Mammoth insists that because "interaction with variations in terrain is a risk inherent in the sport of snow skiing ... the possibility that defendant somehow increased the inherent risk of injury is 'necessarily excluded.'" (Def.'s Reply Mem. in Supp. of Mot. for Summ. J. at 5–6.) But *Fortier* does not stand for such a sweeping proposition. The plaintiff in *Fortier* was injured by a collision with another player during a football game, and the court held that because collisions with coparticipants are inevitable in the game of football, "the possibility that plaintiff's injury resulted from an increase by defendants in the inherent risks is necessarily excluded." *See Fortier,* 45 Cal.App.4th at 437, 440, 52 Cal.Rptr.2d at 816, 818. The passage on which Mammoth relies clearly depends on the court's prior conclusion that the actual "collision in which plaintiff was injured is an inherent risk in the sport in which he was participating." *Id.* Here, by contrast, for reasons already explained, the particular hazard that Randall encountered was not a variation in terrain inherent to the sport; accordingly, the defendant had "a duty to use due care not to increase the risks to a participant over and above those inherent in the sport." *Knight,* 3 Cal.4th at 315–16, 11 Cal.Rptr.2d at 14, 834 P.2d 696.

Mammoth maintains that to "require ski resorts to make every terrain variation 'plainly visible' would not only eviscerate the fundamental challenge of skiing, it would impose an unmanageable burden on ski resorts." (Def.'s Mem. in Supp. of Mot. for Summ. J. at 7.) But denial of Mammoth's motion does not mean that ski resorts would be liable for every terrain variation; it means only that a duty of due care would apply to those variations affirmatively created by the ski resort that are neither obvious nor substantially identical to terrain variations naturally and normally found on ski slopes.

In short, when a ski resort fabricates nonobvious, atypical hazards on its ski runs, it has artificially increased the risks to skiers over and above those inherent in the sport, and thus is not entitled to a no duty determination under the primary assumption of risk doctrine.

### IV.

For the reasons stated, defendant's motion for summary judgment is DENIED.

IT IS SO ORDERED.