Filed 5/29/14  Big League Dreams Chino Hills v. Super. Ct. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| BIG LEAGUE DREAMS CHINO HILLS, LLC, | |
| Petitioner, | E060596 |
| v. | (Super.Ct.No. CIVRS1102289) |
| THE SUPERIOR COURT OF SAN BERNARDINO COUNTY, | OPINION |
| Respondent; | |
| BRIAN HUTCHISON, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS; petition for writ of mandate.  Keith D. Davis, Judge.  Petition granted.

Daley & Heft, Lee H. Roistacher, Robert H. Quayle IV, and Christopher M. Busch for Petitioner.

No appearance for Respondent.

1

Brown & Charbonneau, Gregory G. Brown, Eileen M. Solis; Gibson & Hughes, Jeffrey S. Hughes, Robert B. Gibson; and Donna Bader for Real Party in Interest.

In this case, we conclude that the doctrine of primary assumption of the risk bars a claim against the operator of a softball field by a player who collided with another player, sustaining injury when he fell against the concrete footing of the fence surrounding the field. Accordingly, we grant the petition for writ of mandate and direct the trial court to grant summary judgment for petitioner.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

Real party in interest Hutchison participated in a softball tournament at a field controlled by petitioner, Big League Dreams Chino Hills, LLC. The game took place at a field known as the Yankee Stadium replica field. Hutchison was playing shortstop and he raced out to catch a fly ball over his head. He collided with the left fielder. The collision occurred in foul territory just short of the warning track. Hutchison fell and hit his head on the concrete base of the fence.

Hutchison sues petitioner for premises liability, alleging that it increased the risk of injury by failing to eliminate or warn him about the footing.

---

[1] The court has read and considered the record in this proceeding, the petition, and the response. We have concluded that an alternative writ would add nothing to the presentation already made and would cause undue delay in resolving this matter. We therefore issue a peremptory writ in the first instance. (Code Civ. Proc., § 1088; *Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 178-179; *Alexander v. Superior Court* (1993) 5 Cal.4th 1218, 1222-1223, disapproved on another ground in *Hassan v. Mercy American River Hospital* (2003) 31 Cal.4th 709, 724, fn. 4.)

2

Petitioner moved for summary judgment on the ground of primary assumption of the risk. It argued that the footing did not increase the risk of Hutchison colliding or falling, although arguable it may have increased the severity of his injury. It compared its situation to that of the ski resort operator in *Connelly v. Mammoth Mountain Ski Area* (1995) 39 Cal.App.4th 8, who had no duty to pad ski lift towers. It also argued that stationary objects in foul territory are an inherent risk of the sport of softball and the foul fence here was part of the construction of the field and was designed in part to prevent players from running and slipping on the adjacent sidewalk or collide with the light pole

Hutchison argued that stationary objects in foul territory are not an inherent risk, and that the mow ban was not within acceptable design plans for the City of Chino or petitioner's own policies for maintenance of the field. It relies on petitioner's maintenance chief, Ybarra, who stated he wanted the warning track to be level with the mow band. Hutchison also produced expert testimony from Brad Avrit, a civil engineer, stating that the mow band was in dangerous condition because it was exposed and it was foreseeable that players would come into contact with the area, possibly increasing the severity of the injury. Avrit also opined that the defendants failed to properly maintain the subject area because the dirt from the warning track should be flush with the curb. It was not, exposing the vertical portion of the concrete curb.

The trial court denied summary judgment, finding that primary assumption of the risk did not apply because the concrete base was not an open and obvious condition. While it was evident on close viewing, "[w]hat's open and obvious to a ball player . . . is

3

where the bases are located, what the general condition of the base pads is, what the outfield looks like, where the fences are for purposes of home runs and so forth, and that there might be some dirt or grass areas and all that. But specifics as to how it is the fence is being secured, whether or not there's something underneath the fence, all of that, I think that is probably something that is obvious only to a player who's there and certainly not obvious to, let's say, the pitcher standing on the pitching mound, and that causes me to think that perhaps the doctrine does not apply."

## DISCUSSION

As a general rule, each person has a duty to use ordinary care and is liable for injuries caused by his or her failure to exercise reasonable care in the circumstances. (*Knight v. Jewett* (1992) 3 Cal.4th 296 (*Knight*).) Under the doctrine of primary assumption of risk, however, there is no duty to eliminate or protect a participant in a sport or recreational activity against risks inherent in that sport or activity; but participants do not impliedly assume the risk of actions by the defendant that increase the risk of harm inherent in the sport or recreational activity. (*Calhoon v. Lewis* (2000) 81 Cal.App.4th 108, 115-116 (*Calhoon*).) This principle extends to those risks associated with the construction of the playing field and any open and obvious condition thereon.

The question of assumption of risk is amenable to resolution by summary judgment, since the existence and scope of the defendant's duty of care is a legal question depending on the nature of the sport or activity and on the parties' general relationship to the activity. (*Knight*, *supra*, 3 Cal.4th at p. 313.)

4

In *Calhoon*, the plaintiff skateboarded on his friend's driveway. He fell into a planter and was injured by a metal pipe inside the planter. He sued his friend's parent, who had placed the planter in the driveway. He contended that he had not assumed the risk of such an injury, claiming that the case fell within an exception to the assumption of the risk doctrine, providing that: " 'although defendants generally have no legal duty to eliminate (or protect a plaintiff against) risks inherent in the sport itself, it is well established that defendants generally do have a duty to use due care not to increase the risks to a participant over and above those inherent in the sport.' [Citation.] [Plaintiff claimed the defendants] breached their duty because they increased the risks of skateboarding over and above that inherent in the sport by 'concealing' a metal pipe in a planter in their driveway." (*Calhoon*, *supra*, 81 Cal.App.4th at p. 116.) The Court of Appeal disagreed, stating that "the pipe did not increase [plaintiff]'s risk of injury in the sport. [Plaintiff] was injured because he fell. As [plaintiff] concedes, falling is an inherent risk of skateboarding, and the presence of the pipe or the planter had nothing to do with his falling down. The fact that [plaintiff]'s injuries were more severe than they would have been if the pipe had not been in the planter does not make the assumption of risk doctrine inapplicable. The *Knight* exception applies when the defendant increased the *risk of injury* beyond that inherent in the sport, not when the defendant's conduct may have increased the severity of the injury suffered. (See *Connelly v. Mammoth Mountain Ski Area*[, *supra*,] 39 Cal.App.4th 8, 12 [defendant ski resort operator did not increase risk of injury by failing to pad ski lift towers; although the injury would have been less

5

severe if there had been pads 'there was no evidence [the ski area] did or failed to do anything that caused [the plaintiff] to collide with the tower'].) [Plaintiff]'s focus on the fact that he was unaware of the pipe is misplaced. The assumption of risk doctrine is an objective test and 'does not depend on the particular plaintiff's subjective knowledge or appreciation of the potential risk.' " (*Calhoon*, at p. 116.)

As in *Calhoon*, increasing the severity of the injury is not the test—increasing the risk of injury is.

Plaintiff distinguishes *Calhoon* because it involved a residential landowner and not a sports facility that has a duty to provide a safe playing field. While that is a distinction, *Calhoon*'s analysis regarding the nature of the risk assumed (risk of injury versus risk of severity of injury) remains applicable in this situation. *Calhoon* explained that even if the defendants had increased the risk of harm to the plaintiff, the doctrine would still apply because the defendants, as residential property owners, had no "organized relationship" with the plaintiff. (*Calhoon*, *supra*, 81 Cal.App.4th at p. 117.) Here, petitioner does have an organized relationship, but it did not increase the risk of harm. The issue then becomes whether petitioner increased the risk inherent in the sport. In this case, the risk is the risk of colliding and/or falling. Petitioner's design and maintenance of the field did not increase the risk of colliding or falling when trying to catch a ball.

Compare *Branco v. Kearny Moto Park, Inc.* (1995) 37 Cal.App.4th 184, 193, where a design of a particular jump at a BMX motocross course with acute slope created an extreme risk of injury. The court acknowledge that jumps, and falls, were an inherent

6

risk of the sport and under the doctrine of primary assumption of risk, there is no duty to eliminate the jumps entirely, and no duty to protect from injury arising from reasonably designed jumps. However, the court concluded that the sport does not inherently require jumps that are designed in such a way as to create an extreme risk of injury. In that case, the appellate court found that defendant had increased the risk of falling.

Also see *Van Dyke v. S.K.I. Ltd.* (1998) 67 Cal.App.4th 1310, 1317, where the court, in reversing grant of summary judgment in favor of a ski resort owner, noted that when a ski area puts signs in a ski run, it has a duty to mark the signs so they are plainly visible from all angles to skiers who are skiing on the run. In that case, the court held that the defendant had increased the risk of harm by placing a signpost where it was virtually invisible to skiers crossing over to the connector trail to a chair lift. There, the placement increased an inherent risk of skiing—running into something.

In this case, there is an inherent risk of colliding with other players or the fence, falling while trying to make a play, or even tripping over a base. Petitioner notes that there are no published California decisions expressly discussing inherent risks created by structures that make up the playing field. However, there are analogous cases involving skiing. In *Souza v. Squaw Valley Ski Corp.* (2006) 138 Cal.App.4th 262, 267, it was held that defendant ski resort had no duty to decrease the risk of injury by padding snow making equipment. In *Connelly v. Mammoth Mountain Ski Area*, *supra*, 39 Cal.App.4th 8, the defendant ski resort had no duty to pad the ski lift tower.

7

*Yarber v. Oakland Unified School Dist.* (1992) 4 Cal.App.4th 1516, noted that features both on and off the court constitute inherent risks in playing basketball: "[W]e also conclude that the risk of injury is not confined to the boundaries of the court. The risk inherent in the game extends beyond those lines and involves common occurrences, as when a player is shoved out of bounds, or his momentum when diving for the ball or driving to the basket propels him past the base line. An interested person need only turn on one of the week's many televised basketball games to see players falling, running or being pushed out of bounds onto reporters' tables, television cameras or fans seated near the court. Running into obstacles close to the sidelines must be considered an inherent risk of the game. The danger of an unpadded concrete wall, four feet beyond the boundaries, should have been apparent to anyone playing a full-court game of basketball in that gym. This is especially pertinent here since plaintiff testified he had played basketball in that gym previously and knew the wall was unpadded. This wall was not a 'hidden trap' created by defendant school district." (*Id.* at p. 1520.)

Several out-of-state cases support the principle of assumption of the risk extending to those risks associated with the construction of the playing field and any open and obvious condition thereon. In *Castro v City of New York* (2012) 94 A.D.3d 1032, 1033, the plaintiff could not recover for injuries sustained when he fell on a raised sewer drain while playing softball on a cement yard. In *Brown v. City of New York* (2010) 69 A.D.3d 893, 894, the plaintiff was injured while playing touch football at a public field owned by the defendant when he dove for the football at the sideline and his knee struck a cement

8

strip, which ran alongside the field approximately five feet outside of the sideline. The plaintiff had played at the field previously and was aware of the presence of the cement strip, which was open and obvious. He was precluded from recovering, having failed to raise any triable issue of fact

Here, the trial court found that the cement base was not open and obvious, noting that a pitcher would not necessarily notice it. This view is too narrow. The fence and its base is part of the construction of this field. The base is not hidden and is apparent from a casual inspection. Even Hutchison's opposition is based on the fact that the concrete is exposed. The application of primary assumption of the risk does not depend on the particular plaintiff's subjective knowledge of a particular feature of the field because, as a matter of law, he would have known of the risk of colliding, falling, and/or hitting a stationary object on the boundary of the playing field. (*Knight, supra*, 3 Cal.4th at p. 316.)

Moreover, the exposed concrete footing does not increase the risk of colliding and/or falling and striking fixed objects, although the exact type of and severity of injury might have changed, as in *Calhoon.* We conclude that the doctrine of primary assumption of the risk applies, barring Hutchison's claim

## DISPOSITION

Let a peremptory writ of mandate issue directing the Superior Court of San Bernardino County to set aside its order denying petitioner's motion for summary judgment and to enter a new order granting the motion.

9

Petitioner is directed to prepare and have the peremptory writ of mandate issued, copies served, and the original filed with the clerk of this court, together with proof of service on all parties.

Petitioner is to recover its costs.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
Acting P. J.

We concur:

RICHLI
J.

CODRINGTON
J.