JOHN MEIER, Appellant, v MA-DO BARS, INC., Doing Business as HUNTER VILLAGE INN, Defendant, and PAUL SOLODAR et al., Respondents.

Third Department, January 31, 1985

### APPEARANCES OF COUNSEL

*Simonson Hess & Leibowitz, P. C.* (*Alan B. Leibowitz* of counsel), for appellant.

*Carpenter & Keefe* (*James F. Keefe* of counsel), for respondents.

### OPINION OF THE COURT

HARVEY, J.

This is an action for serious personal injuries sustained by plaintiff while attempting to ride a "mechanical bull" owned and operated by defendant Clean Snow Corporation. There appears to be no significant issue on this appeal as to the respective liabilities and duties of defendants Paul Solodar and Clean Snow Corporation. It is presumed that Paul Solodar was the owner and in complete control of Clean Snow Corporation. Because their interests are identical insofar as the issue on this appeal is concerned, we shall refer to both defendants collectively as "Solodar".

Solodar obtained permission from defendant Ma-Do Bars, Inc., to install and operate a mechanical amusement device in

Hunter Village Inn, a tavern owned by Ma-Do Bars, Inc. The device simulated the spinning and bucking of actual bulls as they performed when ridden in rodeos. The participants attempted to ride the device in the same manner as animals are ridden. It must be assumed that when the device was ridden by patrons of the bar, a rodeo atmosphere was created in which satisfaction was derived from being able to stay on the bull for the predetermined period of time. That it was anticipated that some riders would be unable to stay on the bull was indicated by the fact that air mattresses were spread on the floor surrounding the device.

After observing the mechanical bull being ridden by other patrons, plaintiff talked to the operator and was informed that he could ride the bull upon payment of a $2 fee and execution of a "Liability, Release, Indemnification and Authorization" agreement. He complied with both conditions. He mounted the device and was thrown from it under circumstances not material to the issue before us now.

After commencement of this action and the completion of certain discovery procedures, Solodar moved for summary judgment contending that the agreement was a complete bar to plaintiff's recovery of damages. Special Term granted the motion and plaintiff now appeals. For the purposes of this appeal, we assume that the agreement, if valid and enforceable, was completely exculpatory of any liability on the part of Solodar.

The main thrust of plaintiff's argument is that the exculpatory agreement must be deemed to be void as against public policy and wholly unenforceable because of section 5-326 of the General Obligations Law, which provides: "Every covenant, agreement or understanding in or in connection with, or collateral to, any contract, membership application, ticket of admission or similar writing, entered into between the owner or operator of any pool, gymnasium, place of amusement or recreation, or similar establishment and the user of such facilities, pursuant to which such owner or operator receives a fee or other compensation for the use of such facilities, which exempts the said owner or operator from liability for damages caused by or resulting from the negligence of the owner, operator or person in charge of such establishment, or their agents, servants or employees, shall be deemed to be void as against public policy and wholly unenforceable." In its written decision, Special Term makes no mention of the statute.

This appears to be a case of first impression involving circumstances such as these. The Legislature's intent in enacting such

a statute is the determinative factor in deciding the limits of its application (*Sega v State of New York,* 60 NY2d 183, 191). It is for the court to definitively resolve the legal question of the applicability of a statutory enactment to a particular situation (*James v Board of Educ.,* 42 NY2d 357, 365; *Wurzer v Seneca Sport Parachute Club,* 66 AD2d 1002; see, also, McKinney's Cons Laws of NY, Book 1, Statutes, § 77).

In our view, the instant case is a classic example of those situations which the Legislature had in mind when it extended the declaration of public policy in the General Obligations Law to apply to places of amusement and similar establishments. The mechanical bull was an amusement device for which plaintiff paid a fee to use and enjoy. That a potential danger existed is exemplified by the owner and operator's requirement that an exculpatory agreement be signed by a user. Defendant created a place of amusement or recreation by the installation of the device. The facts are clearly distinguishable from those of *Gross v Sweet* (49 NY2d 102). There was no evidence of any nature that the mechanical bull was operated as an instructional device as was found in *Gross.* We conclude from the facts before us that section 5-326 of the General Obligations Law is controlling and that the agreement is null and void.

MAIN, J. P., WEISS, MIKOLL and YESAWICH, JR., JJ., concur.

Order reversed, on the law, with costs, and motion by defendants Paul Solodar and Clean Snow Corporation denied.