[No. D033168. Fourth Dist., Div. One. June 1, 2000.]

MICHAEL ALAN CALHOON, Plaintiff and Appellant, v.
ALAN LEWIS et al., Defendants and Respondents.

**COUNSEL**

Ernest Calhoon for Plaintiff and Appellant.

Dyer & Everett and Roger C. Dyer for Defendants and Respondents.

**OPINION**

**HALLER, J.**—While waiting for a friend, a young man skateboarded in his friend's driveway. He fell into a planter and was injured by a metal pipe

inside the planter. He sued his friend's parents, who had placed the planter in the driveway. We conclude the trial court properly granted summary judgment because the plaintiff voluntarily assumed the risks inherent in skateboarding and the defendants owed no affirmative duty to the plaintiff to make the driveway safe for skateboarding activities.

## FACTUAL AND PROCEDURAL BACKGROUND

One morning, Michael Alan Calhoon and Wade Lewis agreed that Michael would pick up Wade at his parents' house and then they would drive downtown to visit Wade's girlfriend. When Michael arrived at the Lewises' house, Wade was not ready to leave and asked Michael to wait for a few minutes. While he waited, Michael skateboarded in the Lewises' driveway in front of the garage.

Michael skateboarded for about 10 to 15 minutes, successfully performing a trick, known as an "ollie."[1] As he prepared to perform the trick again, Michael skateboarded across the driveway in the direction of the garage. He attempted to ollie again, but lost control of his skateboard. As he was losing his balance, Michael took three steps backwards. The back of his legs struck a planter located near the garage causing Michael to fall and impale himself on a metal pipe in the planter. Michael suffered serious injuries.

Michael sued Wade's parents, Alan and Linda Lewis, for negligence and premises liability.[2]

In moving for summary judgment, the Lewises presented evidence showing Michael was an experienced skateboarder, who visited Wade "on a daily basis." Michael was aware of the planter and did not consider it to be an obstacle while skateboarding. Michael knew falling was a risk of skateboarding and had fallen numerous times in the past. The planter, which is a small round wooden half-barrel about two feet high, was located in the driveway where the house and the garage meet. Michael admitted at his deposition that the Lewises did not have a reason to believe the planter would be involved in skateboarding activities.

Based on this evidence, the Lewises argued (1) Michael's claim was barred under the doctrine of primary assumption of risk; and (2) the Lewises were immune under Civil Code section 846 (section 846), which abrogates a

---

[1]Michael described an "ollie" as follows: "[W]hen you're skating, with your back foot you tap the tail and the nose comes up. When you tap the tail and your front foot comes forward, the board comes into the air. And then gravity basically brings you down and you've ollied."

[2]Michael also alleged strict products liability, but does not challenge the summary judgment on this claim.

landowner's duty of care toward an individual who was not "invited" onto the property.

Michael opposed the motion, arguing the assumption of risk doctrine was inapplicable because the Lewises increased the risk of injury, and he could not reasonably foresee the risk. Michael also argued section 846 was inapplicable as a matter of law, or at the very least the issue posed a factual question.

Michael produced evidence that Wade had specifically invited him to come onto the property. Michael also submitted evidence showing Wade's father had originally placed the copper pipe in the planter several months before the accident to "hold a [vine] up . . . ," but this vine had since been removed from the planter. Mr. Lewis put the pipe toward the back of the planter "for safety purposes" and because "the morning glories were growing from that pole." Mrs. Lewis later moved the pipe to the center of the planter. The Lewises never warned Michael about the existence of the pipe or that the pipe in the planter would make skateboarding dangerous. In their interrogatory responses, the Lewises admitted that Michael, Wade and several other individuals had skateboarded in the Lewises' driveway. During his deposition, Michael denied that he had previously skateboarded on the Lewises' driveway.

The trial court granted the summary judgment motion based on the section 846 immunity. Michael appeals. We affirm, concluding that although the court erred on the section 846 immunity issue, Michael's claims are barred by the assumption of risk doctrine.

## DISCUSSION

■ Summary judgment is proper only if there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) A court must "strictly construe the moving party's papers and liberally construe those of the opposing party to determine if they raise a triable issue of material fact." (*Stimson v. Carlson* (1992) 11 Cal.App.4th 1201, 1204-1205 [14 Cal.Rptr.2d 670].) We conduct a de novo review, reviewing the trial court's ruling, not its reasoning. (*McCorkle v. State Farm Ins. Co.* (1990) 221 Cal.App.3d 610, 615, fn. 2 [270 Cal.Rptr. 492].)

## I. *Section 846*

 The trial court found Michael's claims were barred by the immunity set forth in section 846.[3] Michael contends summary judgment on this basis was improper because he produced facts showing this case fell within an exception listed in the final paragraph of section 846, permitting an action by one who was "expressly invited" onto the defendant's property. (§ 846, item (c) of last par.)[4] We agree.

The first paragraph of section 846 states a property owner owes no duty to "keep the premises safe for entry or use by others for any recreational purposes . . . , except as provided in this section." The final paragraph of section 846 sets forth three exceptions to this general "no-duty" rule, one of which states "[t]his section does not limit the liability which otherwise exists . . . *to any persons who are expressly invited rather than merely permitted to come upon the premises by the landowner*." (§ 846, item (c), italics added.)

In opposing summary judgment, Michael produced facts showing Wade personally invited him to come onto the Lewises' property to pick him up. This would seem to easily bring this case into section 846, item (c)'s "expressly invited" exception. (See *Phillips v. United States* (9th Cir. 1979) 590 F.2d 297, 299 [the Legislature intended the phrase "expressly invited" to mean "those persons who were personally selected [to come onto the property] by the landowner"]; cf. *Johnson v. Unocal Corp.* (1993) 21 Cal.App.4th 310, 315 [26 Cal.Rptr.2d 148] [exception found inapplicable because defendant did not extend a "direct, personal request" for plaintiff to attend picnic on land].)

---

[3]Section 846 provides in relevant part:

"An owner of . . . real property . . . owes no duty of care to keep the premises safe for entry or use by others for any recreational purpose or to give any warning of hazardous conditions, uses of, structures, or activities on such premises to persons entering for such purpose, except as provided in this section. [¶] . . . [¶]

"An owner of any estate or any other interest in real property, whether possessory or nonpossessory, who gives permission to another for entry or use for the above purpose upon the premises does not thereby (a) extend any assurance that the premises are safe for such purpose, or (b) constitute the person to whom permission has been granted the legal status of an invitee or licensee to whom a duty of care is owed, or (c) assume responsibility for or incur liability for any injury to person or property caused by any act of such person to whom permission has been granted except as provided in this section.

"This section does not limit the liability which otherwise exists (a) for willful or malicious failure to guard or warn against a dangerous condition, use, structure or activity; or (b) for injury suffered in any case where permission to enter for the above purpose was granted for a consideration . . . , or (c) *to any persons who are expressly invited rather than merely permitted to come upon the premises by the landowners*." (Italics added.)

[4]All further references to item (c) of section 846 shall be to the item (c) listed in the code section's final paragraph.

The Lewises nonetheless urge us to find the statutory exception inapplicable because they did not specifically invite Michael onto their property *for the purpose of skateboarding*. The Lewises contend the item (c) exception contemplates an express *invitation to participate in recreational activities*, not an express invitation merely to enter the property. This novel argument is not supported by any applicable authority.

■ In construing a statute, we must focus on the statutory language. (*Johnson v. Unocal Corp., supra*, 21 Cal.App.4th at p. 314.) Absent a contrary indication, we must presume the Legislature meant what it said. (*Lewis v. Superior Court* (1999) 19 Cal.4th 1232, 1245 [82 Cal.Rptr.2d 85, 970 P.2d 872].) ■ The language of section 846, item (c), which refers to *"any persons who are expressly invited rather than merely permitted to come upon the premises by the landowner"* (italics added) does not say a person must be invited for a *recreational* purpose. The exception instead defines a person who is "expressly invited" by distinguishing this person from one who is "merely permitted" to come onto the land. It is undisputed that Michael received a personal invitation to come onto the Lewises property. In other words, he was invited rather than merely permitted. Given this fact, section 846 does not provide the Lewises with immunity.

Our interpretation is consistent with the legislative purpose underlying section 846, which was to " 'constrain the growing tendency of private landowners to bar public access to their land for recreational uses out of fear of incurring tort liability.' " (*Johnson v. Unocal Corp., supra,* 21 Cal.App.4th at p. 315; see *Ornelas v. Randolph* (1993) 4 Cal.4th 1095, 1103 [17 Cal.Rptr.2d 594, 847 P.2d 560]; *Delta Farms Reclamation Dist. v. Superior Court* (1983) 33 Cal.3d 699, 707-708 [190 Cal.Rptr. 494, 660 P.2d 1168] (*Delta Farms*). The Legislature provided the immunity to encourage landowners to permit the " 'general public to recreate . . . on privately owned property' " (*Delta Farms, supra,* 33 Cal.3d at p. 707, italics omitted) "without fear of reprisal in the form of lawsuits." (*Johnson v. Unocal Corp., supra,* 21 Cal.App.4th at p. 315.) By carving out an exception for those persons who are personally invited, the Legislature showed it did not have a similar concern with encouraging property owners to provide access for the owner's personal guests. This distinction makes sense. Property owners do not need governmental encouragement to permit personal guests to come onto their land.

We reject the Lewises' alternate argument that the Legislature intended courts to apply common law "invitee" and "licensee" categories for purposes of applying the exception. The statute specifically distinguishes between one who is invited and one who is permitted to come onto the land, and these

labels do not necessarily match the common law categories of invitees and licensees. Additionally, while these common law categories were in existence when the statute was originally enacted and may have some continuing relevance in applying other parts of the statute (see *Delta Farms, supra,* 33 Cal.3d at p. 706), there is no textual basis or legislative history supporting a conclusion that the Legislature intended the categories to be of significance with respect to the section 846, item (c) exception.

The Lewises also rely on decisions holding that persons responding to advertisements, brochures, promotional materials, and other public offers are not express invitees under the statute. (See *Ravell v. U.S.* (9th Cir. 1994) 22 F.3d 960; *Casas v. U.S.* (C.D.Cal. 1998) 19 F.Supp.2d 1104; *Johnson v. Unocal Corp., supra,* 21 Cal.App.4th 310.) But those courts held a personal, rather than a public, invitation is generally required to come within section 846, item (c)'s "expressly invited" exception. They do not state or suggest the personal invitation must specifically concern "recreation" within the meaning of the statute. (See *Johnson v. Unocal Corp., supra,* 21 Cal.App.4th 310.)

## II. *Assumption of the Risk*

■ "As a general rule, each person has a duty to use ordinary care and 'is liable for injuries caused by his [or her] failure to exercise reasonable care in the circumstances . . . .' (*Rowland* v. *Christian* [(1968)] 69 Cal.2d 108, 112 [70 Cal.Rptr. 97, 443 P.2d 561].)" (*Parsons v. Crown Disposal Co.* (1997) 15 Cal.4th 456, 472 [63 Cal.Rptr.2d 291, 936 P.2d 70] (*Parsons*).) The scope of this duty of care, however, is limited in the context of active sports. (See *Knight v. Jewett* (1992) 3 Cal.4th 296 [11 Cal.Rptr.2d 2, 834 P.2d 696] (*Knight*).) Under the primary assumption of risk doctrine, there is no duty to eliminate or protect a plaintiff against risks that are inherent in a sport or activity. (*Id.* at pp. 315-316.)[5]

Skateboarding is a type of activity covered by the primary assumption of risk doctrine. An activity falls within that doctrine if " 'the activity is done for enjoyment or thrill, requires physical exertion as well as elements of skill, and involves a challenge containing a potential risk of injury.' " (*Bjork v. Mason* (2000) 77 Cal.App.4th 544, 550 [92 Cal.Rptr.2d 49]; *Record v. Reason* (1999) 73 Cal.App.4th 472, 482 [86 Cal.Rptr.2d 547].) These factors certainly apply to skateboarding.

---

[5]Although *Knight* was a plurality opinion, a unanimous Supreme Court later reaffirmed that the "basic principles of *Knight*'s lead opinion [is] the controlling law." (*Cheong v. Antablin* (1997) 16 Cal.4th 1063, 1067 [68 Cal.Rptr.2d 859, 946 P.2d 817]; see *Neighbarger v. Irwin Industries, Inc.* (1994) 8 Cal.4th 532, 537-538 [34 Cal.Rptr.2d 630, 882 P.2d 347].)

■ Michael argues this case falls within an exception to the assumption of the risk doctrine, providing that: "[a]lthough defendants generally have no legal duty to eliminate (or protect a plaintiff against) risks inherent in the sport itself, it is well established that defendants generally do have a duty to use due care not to increase the risks to a participant over and above those inherent in the sport." (*Knight, supra*, 3 Cal.4th at pp. 315-316.) Michael says the Lewises breached their duty because they increased the risks of skateboarding over and above that inherent in the sport by "concealing" a metal pipe in a planter in their driveway.

We disagree.

First, the pipe did not increase Michael's risk of injury in the sport. Michael was injured because he fell. As Michael concedes, falling is an inherent risk of skateboarding, and the presence of the pipe or the planter had nothing to do with his falling down. The fact that Michael's injuries were more severe than they would have been if the pipe had not been in the planter does not make the assumption of risk doctrine inapplicable. The *Knight* exception applies when the defendant increased the *risk of injury* beyond that inherent in the sport, not when the defendant's conduct may have increased the severity of the injury suffered. (See *Connelly v. Mammoth Mountain Ski Area* (1995) 39 Cal.App.4th 8, 12 [45 Cal.Rptr.2d 855] [defendant ski resort operator did not increase risk of injury by failing to pad ski lift towers; although the injury would have been less severe if there had been pads "there was no evidence [the ski area] did or failed to do anything that caused [the plaintiff] to collide with the tower"].) Michael's focus on the fact that he was unaware of the pipe is misplaced. The assumption of risk doctrine is an objective test and "does not depend on the particular plaintiff's subjective knowledge or appreciation of the potential risk." (*Knight, supra*, 3 Cal.4th at p. 316.)

Second, as our Supreme Court recently made clear, the *Knight* exception permitting liability for one who has increased the risks beyond those inherent in the sport, "was made in the context of [the court's] discussion of the duty owed by parties who have some *organized relationship with each other and to a sporting activity . . . .*" (*Parsons, supra*, 15 Cal.4th at p. 481, italics added.) When no such "relationship exists . . . and there is no policy reason for imposing a duty upon the defendant to avoid increasing the risk of harm . . . , the defendant has no such duty." (*Id.* at p. 483.)

*Parsons* held a garbage truck driver driving past a horseback rider owed no generalized duty to avoid increasing the risks in the sport of horseback

riding. (*Parsons, supra*, 15 Cal.4th 456.) The court contrasted the role of the driver with several categories of defendants who had an "organized relationship" with the plaintiff, such as "recreational business operator[s]," "coparticipants," "coach or sport instructor[s]," and "purveyor[s] of recreational activities." (*Id.* at pp. 465, 481-482.) Imposing liability on these defendants for increasing the risks of a sport was justified because they were responsible for, or in control of, the conditions under which the plaintiff engaged in the sport. This policy justification does not extend to a defendant wholly uninvolved with and unconnected to the sport.

The Lewises, as residential property owners, were in a position analogous to the *Parsons* truck driver. There are no facts showing the Lewises held out their driveway as an appropriate place to skateboard or in any other way represented that the driveway was a safe place for skateboarding. Therefore, unlike a recreational business operator or a purveyor of recreational activities, they had no organized relationship with Michael vis-à-vis the sport of skateboarding. Absent this relationship, a party does not have a "general duty not to increase the risk inherent in whatever sporting or recreational activity a plaintiff happens to be pursuing . . . ." (*Parsons, supra*, 15 Cal.4th at pp. 481-482.)

Our conclusion is supported by policy reasons that underlie the assumption of risk doctrine and that are traditionally used to determine the limits of duty. (See *Parsons, supra*, 15 Cal.4th at p. 473.) Imposing a duty on residential owners to make property safe and guard against injuries to those voluntarily participating in the sport of skateboarding would change the nature of skateboarding. As with skiing, the existence of obstacles in the environment is part of the thrill of the sport. (See *O'Donoghue v. Bear Mountain Ski Resort* (1994) 30 Cal.App.4th 188, 192 [35 Cal.Rptr.2d 467].) Homeowners would be encouraged to close their property to skateboarders, decreasing the opportunity for skateboarders to participate in their sport. Foreseeability and cost factors also militate against imposing a general duty on homeowners to refrain from doing anything on their property that could increase risks to skateboarders. It is not reasonable to expect homeowners to predict every possible consequence of a skateboarder's fall, especially when doing so would require homeowners to bear large and unnecessary costs. Requiring homeowners to make their property safe for skateboarding would create an unnecessary burden for our community.

"[T]he nature of the applicable duty or standard of care . . . varies with the role of the defendant whose conduct is at issue in a given case." (*Knight, supra*, 3 Cal.4th at p. 318.) Whereas it would be reasonable to require a skateboarding park owner to take steps to minimize the risks of skateboarding injuries, it would not be reasonable to require the same steps of residential property owners. Absent facts showing a residential property owner is

holding out his or her property for skateboarding use, an owner does not have the duty to refrain from increasing risks to a skateboarder.

## DISPOSITION

Judgment affirmed. Appellant to bear costs on appeal.

Nares, Acting P. J., and McIntyre, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 20, 2000. Mosk, J., was of the opinion that the petition should be granted.