Filed 6/1/16

CERTIFIED FOR PUBLICATION


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Mono)

----


| | |
|---|---|
| RICHARD LEE BERTSCH et al., | |
| Plaintiffs and Appellants, | C076872 |
| v. | (Super. Ct. No. CV120094) |
| MAMMOTH COMMUNITY WATER DISTRICT et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Mono County, Stanley L. Eller, Judge. Affirmed.

KABATECK BROWN KELLNER, Richard L. Kellner, Brian S. Kabateck, Douglas Rochen and Peter Klausner for Plaintiffs and Appellants.

BARBER & BAUERMEISTER, Linda Bauermeister and Robert Kostrenich for Defendant and Respondent Mammoth Community Water District; HORVITZ & LEVY, Barry R. Levy, Lisa M. Freeman and Scott P. Dixler; LAW OFFICES OF PATRICK J. McDONOUGH and Patrick J. McDonough for Defendant and Respondent Sierra Star Community Association.

Brett Bertsch tragically lost his life while skateboarding with his brother in the resort town of Mammoth Lakes. The two were traveling downhill at a "pretty fast" speed, and without helmets, when the front wheels of Brett's skateboard hit a small gap between the paved road and a cement collar surrounding a manhole cover, stopping the wheels and ejecting Brett from the board. The impact of Brett's skull with the pavement resulted in a traumatic brain injury and ultimately death.

Brett's father and brother, Richard and Mitchell Bertsch (plaintiffs), brought a wrongful death action against various defendants, including Mammoth Community Water District (Mammoth), the entity responsible for inspecting and maintaining the manhole cover (defendants), and Sierra Star Community Association (Sierra Star), owner of the road where the accident occurred. The trial court granted summary judgment in favor of defendants, concluding the doctrine of primary assumption of risk barred plaintiffs' lawsuit as a matter of law. Plaintiffs appeal. We conclude the summary judgment motions were properly granted and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

***The Accident***

In September 2011, Richard Bertsch and his two sons, Brett and Mitchell, were staying at a friend's condominium in Mammoth Lakes.[1] The morning of the accident, Brett and Mitchell spent some time "cruising" around the neighborhood on their skateboards "for fun." After stopping at the condominium to get some water, the two set out again on their boards. From the condominium, they traveled down Sierra Star Parkway, made a left turn onto West Bear Lake Road, and then "pushed [their] way up" an incline in the road so they could turn around and come down the hill. Meanwhile, their father was driving down Sierra Star Parkway; he planned to meet them at the

---

[1] Throughout this opinion, we refer to Richard Lee Bertsch by his last name while referring to his sons by their first names.

2

intersection of Sierra Star and West Bear Lake to pick them up to go rock climbing. Bertsch reached the intersection as Brett and Mitchell were coming down the hill. Bertsch estimated their speed to be "about eight to ten miles an hour." Mitchell described their speed as "pretty fast." Neither Brett nor Mitchell was wearing a helmet. As they reached the intersection, Brett was slightly ahead of Mitchell and was traveling on the wrong side of the street. The front wheels of Brett's skateboard stopped abruptly when they hit a small gap between the paved road and a cement collar surrounding a manhole cover, ejecting Brett from the board. The right side of Brett's head struck the pavement as he hit the ground, causing a traumatic brain injury and resulting in his death.

### Lawsuit and Summary Judgment Motions

Plaintiffs sued Sierra Star and Mammoth, among other defendants, for wrongful death. The lawsuit also alleged causes of action for negligence, premises liability, and negligent infliction of emotional distress against Sierra Star. The latter cause of action was also alleged against Mammoth. Finally, Mammoth was alleged to have maintained a dangerous condition on public property within the meaning of Government Code section 835.

Sierra Star and Mammoth each moved for summary judgment. The separate motions asserted plaintiffs' lawsuit was barred by the doctrine of primary assumption of risk. Specifically, defendants argued skateboarding is an activity that is "'done for enjoyment or thrill, requires physical exertion as well as elements of skill, and involves a challenge containing a potential risk of injury,'" and because Brett assumed the risks inherent in skateboarding, including the risk of falling, defendants owed no duty to plaintiffs to protect Brett against that risk.[2] Plaintiffs opposed the motions. With respect

---

[2] Aside from primary assumption of risk, Sierra Star's motion also claimed plaintiffs' lawsuit was barred because Sierra Star qualified for immunity under Civil Code section 846, providing generally, with certain exceptions, a property owner owes no

3

to primary assumption of risk, plaintiffs argued the doctrine did not apply because Brett "was not engaged in a sport or sport-like activity," but was "simply cruising around on his skateboard at a low speed."

### *Trial Court's Ruling*

The trial court agreed with defendants, explaining the "critical undisputed fact" was Brett and Mitchell deliberately turned left onto West Bear Lake Road and went uphill a short distance "to purposely have a longer downhill ride" before meeting up with their father to go rock climbing. As the trial court explained, "[t]here was only one logical purpose for such behavior," i.e., "the thrill and enjoyment of 'cruising'" down West Bear Lake Road on their skateboards. Distinguishing the case from *Childs v. County of Santa Barbara* (2004) 115 Cal.App.4th 64 (*Childs*), relied upon by plaintiffs in opposition to summary judgment, and which will be described in greater detail in the discussion portion of this opinion, the trial court stated: "[T]o imply that skateboarding, when one purposefully ascends a hill only to turn around and then descend that same hill is merely a mode of 'transportation' as referenced in [*Childs*] defies reason." Concluding the doctrine of primary assumption of risk applied, and noting plaintiffs had not alleged any gross negligence or recklessness in their lawsuit against defendants, the trial court granted the motions and entered judgment in favor of defendants.

---

duty to keep the owner's property safe for use by others for recreational purposes. Mammoth's motion also claimed entitlement to summary adjudication of plaintiffs' Government Code section 835 cause of action, arguing: (1) the manhole cover and concrete collar did not constitute a "dangerous condition"; (2) Mammoth had no actual or constructive notice of the alleged dangerous condition; and (3) Mammoth qualified for the defense of design immunity under Government Code section 830.6. Because we conclude the trial court properly granted both summary judgment motions on assumption of risk grounds, we have no need to address these additional arguments. We mention them no further.

DISCUSSION

## I

### *Summary Judgment Principles*

We begin by summarizing several principles that govern the grant and review of summary judgment motions under section 437c of the Code of Civil Procedure.

"A defendant's motion for summary judgment should be granted if no triable issue exists as to any material fact and the defendant is entitled to a judgment as a matter of law. [Citation.] The burden of persuasion remains with the party moving for summary judgment. [Citation.]" (*Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1002-1003 (*Kahn*); Code Civ. Proc., § 437c, subd. (c).) Thus, a defendant moving for summary judgment "bears the burden of persuasion that 'one or more elements of' the 'cause of action' in question 'cannot be established,' or that 'there is a complete defense' thereto. [Citation.]" (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850; Code Civ. Proc., § 437c, subd. (o)(2).) Such a defendant also "bears the initial burden of production to make a prima facie showing that no triable issue of material fact exists. Once the initial burden of production is met, the burden shifts to [plaintiff] to demonstrate the existence of a triable issue of material fact." (*Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1250, citing *Aguilar*, *supra*, 25 Cal.4th at pp. 850-851.)

On appeal from the entry of summary judgment, "[w]e review the record and the determination of the trial court de novo." (*Kahn*, *supra*, 31 Cal.4th at p. 1003.) "While we must liberally construe plaintiff's showing and resolve any doubts about the propriety of a summary judgment in plaintiff's favor, plaintiff's evidence remains subject to careful scrutiny. [Citation.] We can find a triable issue of material fact 'if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof.' [Citation.]" (*King v. United Parcel Service, Inc.* (2007) 152 Cal.App.4th 426, 433.)

## II

### *The Doctrine of Primary Assumption of Risk*

With participation in sports and other sport-like activities comes risk of injury. "As a general rule, persons have a duty to use due care to avoid injury to others, and may be held liable if their careless conduct injures another person." (*Knight v. Jewett* (1992) 3 Cal.4th 296, 315 (*Knight*); Civ. Code, § 1714.) However, "[t]he existence of a duty is not an immutable fact of nature, but rather an expression of policy considerations providing legal protection. [Citation.] Thus, the existence and scope of a defendant's duty is a question for the court's resolution. [Citation.] When a sports participant is injured, the considerations of policy and duty necessarily become intertwined with the question of whether the injured person can be said to have assumed the risk. [Citation.]" (*Shin v. Ahn* (2007) 42 Cal.4th 482, 488-489.)

Under the doctrine of primary assumption of risk, a defendant generally owes no duty to protect a participant in a sports or sport-like activity against risks that are inherent in that activity. (*Knight*, *supra*, 3 Cal.4th at pp. 315-316.) In *Knight*, our Supreme Court explained: "[A] property owner ordinarily is required to use due care to eliminate dangerous conditions on his or her property. [Citation.] In the sports setting, however, conditions or conduct that otherwise might be viewed as dangerous often are an integral part of the sport itself. Thus, although moguls on a ski run pose a risk of harm to skiers that might not exist were these configurations removed, the challenge and risks posed by the moguls are part of the sport of skiing, and a ski resort has no duty to eliminate them. [Citation.] In this respect, the nature of a sport is highly relevant in defining the duty of care owed by the particular defendant." (*Id*. at p. 315.)

Also relevant is "the defendant's role in, or relationship to, the sport" engaged in by the participant. (*Knight*, *supra*, 3 Cal.4th at p. 317.) This is because certain relationships give rise to a "duty to use due care not to increase the risks to a participant over and above those inherent in the sport." (*Id*. at p. 316.) Returning to the skiing

6

example, "although a ski resort has no duty to remove moguls from a ski run, it clearly does have a duty to use due care to maintain its towropes in a safe, working condition so as not to expose skiers to an increased risk of harm." (*Id*. at p. 316.) Such a duty arises from the ski resort-patron relationship. (See *Parsons v. Crown Disposal Co.* (1997) 15 Cal.4th 456, 482 ["purveyor of recreational activities owes a duty to a patron not to increase the risks inherent in the activity in which the patron has paid to engage"].) Similarly, "a coach or sport instructor owes a duty to a student not to increase the risks inherent in the learning process undertaken by the student." (*Ibid*.) However, as our Supreme Court clarified in *Parsons*, where there is "no such (or similar) relationship" between a defendant and the participant relating to the activity, "a defendant generally has no duty to avoid increasing the risks inherent in [the] activity." (*Ibid*.)

Thus, in determining whether defendants owed a duty to protect Brett against falling from his skateboard as he traveled over the manhole cover, we must consider both the nature of skateboarding and defendants' role in Brett's participation in that activity. We turn to this analysis now.

### III

### *Application of the Doctrine Precludes Liability in this Case*

"Skateboarding is a type of activity covered by the primary assumption of risk doctrine. An activity falls within that doctrine if "'the activity is done for enjoyment or thrill, requires physical exertion as well as elements of skill, and involves a challenge containing a potential risk of injury.'" [Citations.] These factors certainly apply to skateboarding." (*Calhoon v. Lewis* (2000) 81 Cal.App.4th 108, 115 (*Calhoon*), quoting *Bjork v. Mason* (2000) 77 Cal.App.4th 544, 550; see also *Record v. Reason* (1999) 73 Cal.App.4th 472, 482.)

In *Calhoon*, *supra*, 81 Cal.App.4th 108, the plaintiff (Michael) was skateboarding in his friend's driveway while waiting for the friend to get ready to leave with him. He was injured while doing an "ollie," a relatively simple trick performed by jumping up

7

while on the board and simultaneously tapping the tail of the board against the ground, causing the board to come into the air with the rider. Michael lost his balance during the trick, fell into a planter, and impaled himself on a metal pipe in the planter. He sued his friend's parents for negligence and premises liability. (*Id*. at p. 111 & fn. 1.) The Court of Appeal held the lawsuit was barred by the doctrine of primary assumption of risk. After concluding skateboarding is subject to the doctrine for the reasons stated above, the court explained: "Michael was injured because he fell. As Michael concedes, falling is an inherent risk of skateboarding, and the presence of the pipe or the planter had nothing to do with his falling down. The fact that Michael's injuries were more severe than they would have been if the pipe had not been in the planter does not make the assumption of risk doctrine inapplicable." (*Id*. at p. 116)

The court also disagreed with Michael's assertion the defendants owed a duty to use due care not to increase the risks of skateboarding, explaining such a duty arises only if there is an " 'organized relationship'" between the defendants and the participant in relation to the sporting activity, such as exists between a recreational business operator and its patrons, or between a coach or instructor and his or her students. (*Calhoon*, *supra*, 81 Cal.App.4th at pp. 116-117, quoting *Parsons*, *supra*, 15 Cal.4th at pp. 481-482.) The court explained imposing such a duty in the context of these types of relationships is justified because the defendants are "responsible for, or in control of, the conditions under which the [participant] engaged in the sport." (*Id*. at p. 117.) However, "[t]his policy justification does not extend to a defendant wholly uninvolved with and unconnected to the sport," such as the defendants in *Calhoon*, who neither "held out their driveway as an appropriate place to skateboard or in any other way represented that the driveway was a safe place for skateboarding." (*Ibid*.)

Finally, the court pointed out its conclusion Michael's lawsuit was barred by the doctrine of primary assumption of risk was supported by policy reasons underlying the doctrine: "Imposing a duty on residential owners to make property safe and guard

8

against injuries to those voluntarily participating in the sport of skateboarding would change the nature of skateboarding. As with skiing, the existence of obstacles in the environment is part of the thrill of the sport. [Citation.] Homeowners would be encouraged to close their property to skateboarders, decreasing the opportunity for skateboarders to participate in their sport. Foreseeability and cost factors also militate against imposing a general duty on homeowners to refrain from doing anything on their property that could increase risks to skateboarders. It is not reasonable to expect homeowners to predict every possible consequence of a skateboarder's fall, especially when doing so would require homeowners to bear large and unnecessary costs. Requiring homeowners to make their property safe for skateboarding would create an unnecessary burden for our community." (*Calhoon*, *supra*, 81 Cal.App.4th at p. 117.)

Here, while Brett was not performing a trick on his skateboard at the time of the accident, but was instead "cruising" down a hill, we agree with the trial court such an activity is equally subject to the doctrine of primary assumption of risk. Indeed, there can be no serious dispute that traveling downhill on a skateboard "'is done for enjoyment or thrill, requires physical exertion as well as elements of skill, and involves a challenge containing a potential risk of injury'" (*Bjork v. Mason*, *supra*, 77 Cal.App.4th at p. 550, quoting *Record v. Reason*, *supra*, 73 Cal.App.4th at p. 482), the most obvious risk of injury coming from the prospect of falling off the board. (See *Calhoon*, *supra*, 81 Cal.App.4th at p. 116 ["falling is an inherent risk of skateboarding"].) This inherent risk is precisely what materialized the morning of the accident and resulted in Brett's tragic death.

Nevertheless, relying primarily on *Childs*, *supra*, 115 Cal.App.4th 64, and *Moser v. Ratinoff* (2003) 105 Cal.App.4th 1211 (*Moser*), plaintiffs contend the doctrine is inapplicable to this case because Brett was neither participating in an organized skateboarding activity nor attempting any "high risk maneuvers" on the board. We are not persuaded.

9

In *Childs*, *supra*, 115 Cal.App.4th 64, an 11-year-old child (Tatiana) fell off her scooter while riding on a public sidewalk and suffered injuries. She sued the County, through her guardian ad litem, alleging the County negligently maintained the sidewalk in a dangerous condition. The trial court granted summary judgment in favor of the County based on assumption of risk. (*Id*. at p. 68.) The Court of Appeal reversed, concluding: "[T]he record does not establish as a matter of law that Tatiana was engaged in a sport or sports-related recreational activity covered by the assumption of risk doctrine. Riding a scooter may be subject to the doctrine under some circumstance[s], but we cannot conclude, as the trial court did, that riding a scooter is a recreational activity subject to the doctrine under all circumstances." (*Id*. at pp. 70-71.) The court acknowledged, "the evidence at trial may show that Tatiana was riding her scooter in an adventuresome and thrill-seeking manner," but concluded the evidence presented in support of the summary judgment motion did not establish she was doing anything more than riding the scooter to get from one place to another. (*Id*. at p. 71.)

In so concluding, the *Childs* court distinguished *Moser*, *supra*, 105 Cal.App.4th 1211, a case in which the Court of Appeal held the primary assumption of risk doctrine applied to "organized, noncompetitive, recreational bicycle riding" because, while riding a bicycle purely as a means of transportation would not be subject to the doctrine, "organized, long-distance bicycle rides on public highways with large numbers of riders involve physical exertion and athletic risks not generally associated with . . . individual bicycle riding on public streets or on bicycle lanes or paths." (*Id*. at p. 1221.) The *Childs* court concluded the same distinction applied to Tatiana's scooter riding, but in reverse: "Riding a scooter as a means of transportation on a public sidewalk is not the same activity as 'scootering' by a number of riders in an organized event." (*Childs*, *supra*, 115 Cal.App.4th at p. 72.) Finally, the court distinguished *Calhoon* based on the lack of evidence "showing that Tatiana fell while attempting to perform a stunt or while riding her scooter for thrills or excitement." (*Childs*, *supra*, 115 Cal.App.4th at p. 72.)

10

Here, unlike *Childs, supra*, 115 Cal.App.4th 64, there was evidence submitted in support of the summary judgment motions establishing Brett was doing more than riding his skateboard as a means of transportation. As the trial court appropriately observed, plaintiffs did not dispute Brett and his brother deliberately turned left onto West Bear Lake Road and went uphill a short distance before turning around to come down the hill. We agree with the trial court that "[t]here was only one logical purpose for such behavior," i.e., the thrill and excitement of coming down the hill on their skateboards. Nor does the fact their father was meeting them at the intersection of Sierra Star Parkway and West Bear Lake Road, as he testified in his deposition, transform the ride down the hill into the simple "transportation" distinguished in *Moser, supra,* 105 cal.app.4th 1211 and assumed to be the case in *Childs*. Indeed, Brett and Mitchell were at that intersection when they turned left onto West Bear Lake Road, pushed their way up the hill, and then came back down. Thus, they did not need to come down this hill to meet their father; they could have waited for him at the intersection. They went up the hill to experience the thrill and excitement of coming back down on their skateboards.

We also conclude such behavior carried at least as much risk as the "ollie" attempted in *Calhoon, supra,* 81 Cal.App.4th 108. It does not take an expert in skateboarding to understand that coming down a hill on a skateboard presents a greater challenge to maintaining one's balance than simply riding on a level surface. Moreover, plaintiffs did not dispute Brett was coming down the hill on the wrong side of the street and was not wearing a helmet.[3] While it might be argued the lack of a helmet did not increase the risk of falling, but rather the seriousness of the resulting injury should a fall

---

[3]      While plaintiffs disputed the existence of oncoming traffic, they did not dispute Brett was on the wrong side of the street. Indeed, because the manhole cover was in the oncoming lane, Brett would have had to have been in this lane in order for the gap between the road and the cement collar around the manhole cover to have caused the accident.

occur, coming down a hill *on the wrong side of the street* certainly increased the risk of falling. This is because the existence of an oncoming car while traveling down the hill would have required quick thinking and deft maneuvering to avoid a collision. There was no such oncoming car on the morning of the accident, but here we are simply assessing the risk inherent in the specific activity Brett chose to engage in that morning. Riding a skateboard down a hill in this manner is far more analogous to attempting an "ollie" than simply riding a bicycle or scooter as a means of transportation—and quite likely more dangerous than the trick attempted in *Calhoon*.

Plaintiffs further assert defendants' negligence in failing to properly maintain the street and manhole cover "increased the risks to Brett above and beyond those inherent in riding a skateboard." As previously mentioned, a similar argument was made and rejected in *Calhoon*. As in that case, the defendants owed no duty to use due care not to increase the risks of skateboarding because there was no organized relationship between either of these defendants and Brett in relation to this activity. Borrowing from the *Calhoon* analysis, neither defendant in this case "held out [the roadway or manhole cover] as an appropriate place to skateboard or in any other way represented that the [roadway or manhole cover] was a safe place for skateboarding." (*Calhoon*, *supra*, 81 Cal.App.4th at p. 117.)[4]

Finally, the policy reasons stated in *Calhoon, supra*, 81 Cal.App.4th 108 for declining to impose such a duty on homeowners apply equally to the defendants in this case. To require road owners and water districts, whether private or public, to make their

---

[4]    Another case relied upon by plaintiffs, *Solis v. Kirkwood Resort Co.* (2001) 94 Cal.App.4th 354, is also distinguishable on this basis. Whereas Kirkwood Resort, as a recreational business operator, has an organized relationship with its patrons vis-a-vis the sport of skiing, no such relationship exists in this case.

roads and utility access points safe for skateboarding would amount to an unnecessary burden.

The trial court properly granted defendants' motions for summary judgment based on the doctrine of primary assumption of risk.

DISPOSITION

The judgment is affirmed. Defendants, Mammoth Community Water District and Sierra Star Community Association are entitled to costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)


                                                            /s/
                                        HOCH, J.



We concur:



          /s/
ROBIE, Acting P. J.



          /s/
MAURO, J.


13