Filed 9/14/22  Murillo v. Diego CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| MARILYN MURILLO,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>VICTOR DIEGO et al.,<br><br>Defendants and Respondents. | B312272<br><br>(Los Angeles County<br>Super. Ct. No.<br>19AVCV00906) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Wendy W.Y. Chang, Judge.  Affirmed.

Kistler Law Firm and Jo Caro for Plaintiff and Appellant.

West Corzine, Eugene F. West and John D. Tullis for Defendants and Respondents.

After she fell off a mechanical bull at a child's birthday party and was injured, Marilyn Murillo (plaintiff) sued Victor Diego (Victor), the owner of the home where the party was held, and Cruz Lopez (Cruz), Victor's brother-in-law who helped Victor purchase the residence (collectively, defendants).  The trial court granted summary judgment for defendants, finding the primary assumption of the risk doctrine barred relief because the risk of being thrown from a mechanical bull is inherent in and integral to the activity.  We determine whether plaintiff established a material dispute of fact over whether defendants owed her a duty of care.

## I.  BACKGROUND

### A.     *The Accident*

On February 2, 2019, Victor and his wife hosted a party at their Palmdale home to celebrate their daughter's 12th birthday.  Victor's daughter asked to have a mechanical bull at the party.  The bull, which Victor rented from a local business, P&M Party Rental, was delivered to Victor's home on the day of the party.  The device did not have a saddle, only a single rope grip positioned near the bull's neck.  The bull was set up by employees of another company and it was enclosed in an accompanying bounce house.  Victor did not make or observe any changes being made to the bull after it was readied for use.

Among the party's invitees was Cruz.  Although he had helped his sister and Victor purchase their home, Cruz did not live there or manage the property.  In addition, he played no role in organizing or hosting the party and, like Victor, did not make changes to the bull (or see changes being made) after it had been set up.

2

Also among the party goers was plaintiff, an adult. Plaintiff knew before attending that a mechanical bull would be at the party and, indeed, that was the "main reason" she decided to attend a child's birthday party. Previously, plaintiff had ridden and been thrown from a mechanical bull when visiting a theme park.

The party began in the early afternoon. Throughout the course of the afternoon, the children at the party—Victor's daughter, her four siblings, and 10 girlfriends—rode the bull. Although the children were routinely thrown off the bull, none of them suffered any injury or complained about the bull or its operation.

Plaintiff, like a number of her adult friends at the party, waited to ride the bull until after the children finished riding it. As plaintiff waited for her turn, she watched her friends ride the bull, each of whom was thrown off without injury or complaint. As she watched the others, plaintiff did not see anything that dissuaded her from riding the bull. Before mounting the bull, plaintiff expected to be thrown off but she thought it would be "fun" to try to hold on as long as possible before being thrown.

When plaintiff mounted the bull, she placed her left hand under the rope grip and her right hand on top on the grip with her right thumb "laced" between the grip and her left hand. As she rode the bull, plaintiff did not sense the ride was performing in any way differently than it had for her friends who preceded her. At some point during her ride, plaintiff was thrown from the bull—and in the process the tip of her right thumb was severed.

*B.      Defendants' Motion for Summary Judgment*

Plaintiff sued defendants for negligence and premises liability.  Defendants moved for summary judgment on the ground they had no duty to protect plaintiff from the inherent risks of riding a mechanical bull.  They argued being thrown from a mechanical bull is an intrinsic risk of the activity, as is the possibility of injury from such a throw.

In support of their motion, defendants each submitted a declaration denying any role in setting up or altering the bull.  In addition, they submitted excerpts from the transcript of plaintiff's deposition in which she admitted, among other things, she attended the party in order to ride the bull, had prior experience riding (and being thrown from) a mechanical bull, and fully expected to be thrown from the bull at the party.

Plaintiff opposed defendants' motion for summary judgment.  In the main, plaintiff contended her particular injury, a severed thumb, is not an inherent risk of riding a mechanical bull.  In addition, she argued defendants increased the inherent risks by offering a mechanical bull without a saddle and proper handgrips.  Plaintiff supported her opposition with her own declaration, a declaration from Pedro Lopez (Lopez) the owner of the company that set up the mechanical bull at the party, and one of her attorneys.

Plaintiff declared the risks inherent in the activity were made "more dangerous" due to the absence of a saddle and the presence of only a single rope grip, which was placed in an "unusual orientation."  Lopez's declaration did not address the orientation of the rope grip, but he did state "[t]he bull has an accompanying saddle that has a handle for riders to hold onto while riding."  Lopez, however, did not discuss the condition in

4

which the bull was installed by his employees; he did not state, for instance, that the bull was delivered with a saddle available for use or mounted on the bull's back.  The declaration from plaintiff's counsel attached three photographs: one of the bull without a saddle, one of a saddle by itself, and one with a saddle mounted on the bull.

Plaintiff did not fully dispute any of the 26 undisputed facts proffered by defendants in support of their motion.  She offered only qualifications to two of the proffered undisputed facts: she maintained the tip of her thumb was severed due to the unusual orientation of the bull's rope grip and the absence of a saddle and she asserted defendants were in possession and control of the bull while it was at Victor's home.

In their reply brief, defendants argued there was no evidence (1) a saddle was ever provided with the bull used at the party or (2) the presence of a saddle would have affected the risks inherent in riding a mechanical bull.  Concurrent with their reply brief, defendants filed evidentiary objections to selected statements in plaintiff's declaration regarding the rope grip's allegedly unusual orientation and the purported effects arising from the missing saddle; defendants argued such statements lacked foundation and contradicted plaintiff's deposition testimony.  Defendants also objected to the photograph of the missing saddle mounted on the bull submitted with the declaration by plaintiff's attorney as lacking foundation.

C.     *The Trial Court's Ruling*

After hearing argument, the trial court took the matter under submission and issued a ruling in January 2021 granting summary judgment to defendants.  In reaching its decision, the

5

trial court sustained defendants' foundation objection to the statements in plaintiff's declaration about the orientation of the bull's rope grip.[1]  The court also sustained defendants' objections to the photograph purporting to show a missing saddle mounted on the bull used at the party.[2]

The court found the primary assumption of risk doctrine barred plaintiff's causes of action because "the risk of falling off or being thrown off a mechanical bull is inherent and integral to the act of riding it," plaintiff knew of the risk before attending the party, plaintiff was reminded of the risk as she waited her turn on the bull, and plaintiff fully expected to be thrown off when she climbed on to the bull.  The court additionally found there was no admissible evidence supporting plaintiff's assertion that the bull should have been equipped with a saddle and proper handgrips.  The court rejected plaintiff's argument that defendants should have recognized additional dangers posed by a bull not equipped with a saddle or different handgrips because defendants were ordinary consumers who did not design, manufacture, or install the bull or any of its component parts.[3]

---

[1]     The court also stated that where plaintiff's declaration contradicted her prior deposition testimony, the court would rely on the latter.

[2]     Plaintiff does not challenge the trial court's evidentiary rulings on appeal.

[3]     The trial court also "note[d]" riding a mechanical bull fell within the purview of Civil Code section 846.  That statute provides an owner of real property does not owe a duty of care to those who enter the property for a "recreational purpose" unless they were "expressly invited rather than merely permitted to come upon the premises by the landowner."  (Civ. Code, § 846,

6

## II.  DISCUSSION

Our review of the judgment is de novo (*Ennabe v. Manosa* (2014) 58 Cal.4th 697, 705), and we hold the trial court correctly granted summary judgment for defendants pursuant to the primary assumption of risk doctrine (see generally *Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1004 ["the question of 'the existence and scope' of the defendant's duty is one of law to be decided by the court, not by a jury, and therefore it generally is 'amenable to resolution by summary judgment'"] (*Kahn*)).  The risk of being thrown while attempting to hold on to a bucking mechanical bull is inherent in riding such a bull, and defendants' attenuated relationship to the activity (as hosts of a social event held at a private residence who did not set up the bull or provide any advice about how it should be ridden) precludes finding they owed plaintiff a duty of care.

### A.      *The Primary Assumption of Risk Doctrine Generally*

"'Although persons generally owe a duty of due care not to cause an unreasonable risk of harm to others (Civ. Code, § 1714, subd. (a)), some activities . . . are inherently dangerous. Imposing a duty to mitigate those inherent dangers could alter the nature of the activity or inhibit vigorous participation.' [Citation.]  The primary assumption of risk doctrine, a rule of limited duty, developed to avoid such a chilling effect. [Citations.]" (*Nalwa v. Cedar Fair, L.P.* (2012) 55 Cal.4th 1148, 1154 (*Nalwa*).)

---

subds. (a), (b), & (d)(3); *Calhoon v. Lewis* (2000) 81 Cal.App.4th 108, 113-115 (*Calhoon*).)  We need not address the issue in light of our disposition of this appeal.

"Primary assumption of the risk arises when, as a matter of law and policy, a defendant owes no duty to protect a plaintiff from particular harms. [Citation.]" (*Avila v. Citrus Community College Dist.* (2006) 38 Cal.4th 148, 161 (*Avila*).) "Under this duty approach, a court need not ask what risks a particular plaintiff subjectively knew of and chose to encounter, but instead must evaluate the fundamental nature of the sport [or activity] and the defendant's role in or relationship to that sport [or activity] in order to determine whether the defendant owes a duty to protect a plaintiff from the particular risk of harm." (*Id.*; accord, *Nalwa, supra,* 55 Cal.4th at 1162 ["The scope of the duty owed to participants in active recreation . . . depends not only on the nature of the activity but also on the role of the defendant whose conduct is at issue"].) In deciding the issue of inherent risk for purposes of the primary assumption of risk doctrine, courts "may . . . consult case law, other published materials, and documentary evidence introduced by the parties on a motion for summary judgment." (*Nalwa, supra,* at 1158; see also *Zipusch v. LA Workout, Inc.* (2007) 155 Cal.App.4th 1281, 1292 [in determining whether a risk is inherent in an activity, a reviewing court considers "the record and common sense"].)

An activity falls within the purview of the primary assumption of risk doctrine "if '"the activity is done for enjoyment or thrill, requires physical exertion as well as elements of skill, and involves a challenge containing a potential risk of injury."'" (*Calhoon, supra,* 81 Cal.App.4th at 115 [holding skateboarding is a type of activity covered by the primary assumption of risk doctrine]; accord, *Bertsch v. Mammoth Community Water Dist.* (2016) 247 Cal.App.4th 1201, 1208 [same].) California courts have concluded a wide range of recreational activities fall within

the doctrine's purview. (See, e.g., *Nalwa*, *supra*, 55 Cal.4th at 1156-1157 [bumper car rides at an amusement park]; *Shin v. Ahn* (2007) 42 Cal.4th 482, 497 [recreational golf]; *Knight v. Jewett* (1992) 3 Cal.4th 296, 318-320 [touch football]; *Ford v. Gouin* (1992) 3 Cal.4th 339, 345 [recreational water skiing]; *Moser v. Ratinoff* (2003) 105 Cal.App.4th 1211, 1221 [long-distance recreational group bicycle ride].)

The inquiry into the nature of an activity focuses on the general risks inherent in the activity, not the specific type of injury suffered by a particular plaintiff. In *Calhoon*, for instance, the plaintiff was injured when he fell off his skateboard and accidentally impaled himself on a metal pipe located in a planter in a friend's driveway. (*Calhoon*, *supra*, 81 Cal.App.4th at 111.) The plaintiff sued his friend's parents for negligence and premises liability. (*Id*. at 111-112.) The trial court granted summary judgment to the defendants and the Court of Appeal affirmed, holding the primary assumption of risk doctrine precluded recovery. (*Id*. at 115-118.) In reaching its decision, the Court of Appeal gave little weight to the unexpectedly severe nature of the plaintiff's injury: "[T]he pipe did not increase Michael's risk of injury in the sport. Michael was injured because he fell. As Michael concedes, falling is an inherent risk of skateboarding, and the presence of the pipe or the planter had nothing to do with his falling down. The fact that Michael's injuries were more severe than they would have been if the pipe had not been in the planter does not make the assumption of risk doctrine inapplicable." (*Id*. at 116.)

Although a defendant does not have a duty to protect a plaintiff from inherent risks of activities subject to the primary assumption of risk doctrine, the defendant does retain a duty "not

9

to increase the risk of harm beyond what is inherent" in the activity. (*Kahn*, *supra*, 31 Cal.4th at 1004.) This do-not-increase-the-harm qualification to primary assumption of risk principles, however, applies only when there is some "organized relationship" between the parties, such as when the defendant and plaintiff are "recreational business operator and patron," or the defendant is a "coach or sport instructor" or a "purveyor of recreational activities." (*Parsons v. Crown Disposal Co.* (1997) 15 Cal.4th 456, 465, 481-482 (*Parsons*).) When no such "relationship exists . . . and there is no policy reason for imposing a duty upon the defendant to avoid increasing the risk of harm . . . , the defendant has no such duty. (*Id.* at 483; see also *id.* at 482 ["when, as here, parties have no . . . [organized] relationship— and instead are independent actors, separately pursuing their own activities—a defendant generally has no duty to avoid increasing the risks inherent in a plaintiff's activity"].)

### B. The Primary Assumption of Risk Doctrine Precludes Liability for Defendants

"The elements of a negligence claim and a premises liability claim are the same: a legal duty of care, breach of that duty, and proximate cause resulting in injury." (*Kesner v. Superior Court* (2016) 1 Cal.5th 1132, 1158.) Defendants were entitled to summary judgment on plaintiff's causes of action because there is no dispute of material fact precluding a determination that defendants owed her no duty of care under the primary assumption of risk doctrine.

Although no published California appellate opinion has yet addressed the inherent risks of riding a mechanical bull, courts in other jurisdictions have. (*Meier v. Ma-Do Bars, Inc.*

10

(N.Y.App.Div. 1985) 484 N.Y.S. 2d 719, 720-721 [a mechanical bull is a motorized "amusement device" that simulates "the spinning and bucking of actual bulls as they perform when ridden in rodeos"]; *Van Tuyn v. Zurich American Ins. Co.* (Fla.Dist.Ct.App. 1984) 447 So.2d 318, 319 [a mechanical bull moves "forward, backward and sideways direction, the object being to dislodge the rider"] (*Van Tuyn*); *Flowers v. SRKC, LLC* (D.Kan. Mar. 30, 2010, No. 09-2364-CM) 2010 WL 11628012 at *6 ["Falling off of the mechanical bull or being thrown from it are anticipated inherent risks when riding a mechanical bull"].) Based on these cases from other jurisdictions, the evidence in the summary judgment record, and common sense, we hold mechanical bull riding is a type of activity covered by the primary assumption of risk doctrine: it is done for thrill, requires physical exertion as well as skill, and carries a risk of injury. Like riding a horse, riding a mechanical bull has certain inherent and obvious risks, most notably falling or being thrown from the device.

The undisputed facts establish plaintiff was well aware of the inherent risks of being thrown from a mechanical bull. On a previous occasion, she rode and was thrown from a mechanical bull in a commercial venue (a theme park). Moreover, while waiting in line at the birthday party, plaintiff observed each of her friends being thrown from the bull; as a result, she fully expected to be thrown from the bull when it was her turn on the ride. The undisputed facts also show that the parties' relationship to the activity did not create a duty of care on defendants' part. Defendants were not operators of a commercial enterprise promoting mechanical bull riding. Victor was merely the host of his daughter's birthday party and Cruz was one of his

11

guests. In addition, there was no evidence defendants, either individually or collectively, held themselves out as expert and experienced mechanical bull riders or instructors, or that they provided any guidance to plaintiff before she rode the bull. (Compare *Van Tuyn*, *supra*, 447 So.2d at 319 [reversing grant of summary judgment because a genuine issue of material fact existed with respect to, among other things, whether plaintiff, a first-time mechanical bull rider, fully understood the risks and dangers involved in riding the device].) Moreover, defendants did not own the bull in question or prepare it for the partygoers' use; Victor rented it from a party supply vendor and another company set the device up at Victor's home. There was also no evidence defendants modified the bull in any way after it had been set up. These undisputed facts are accordingly sufficient to establish the primary assumption of risk doctrine applies here and precludes recovery because defendants owed plaintiff no duty of care.

Plaintiff's only counterargument is that the primary assumption of risk doctrine should not apply because defendants increased the risks inherent in mechanical bull riding by failing to provide a saddle for the bull. We will assume for argument's sake that there was an organized relationship between plaintiff and defendants that would permit liability *if* defendants did increase the risk of riding a mechanical bull. (But see *Parsons*, *supra*, 15 Cal.4th at 481-482.) But even in that counterfactual scenario, there is no admissible evidence that defendants did increase the risk. The undisputed facts established the mechanical bull was set up by people other than defendants. Plaintiff adduced no evidence that Victor was offered and declined an option by P&M Party Rental to have the bull equipped with a saddle or that the mechanical bull as set up by

Lopez's company was equipped with a saddle and defendants either asked that the saddle be removed or removed it themselves. There is also no substantial evidence, in any event, that the absence of a saddle on the mechanical bull increased the inherent risk of injury.

## DISPOSITION

The judgment is affirmed. Defendants shall recover their costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

BAKER, Acting P. J.

We concur:

MOOR, J.

KIM, J.

13